144 Pa. Commonwealth Ct. 238 (1991)
601 A.2d 445
LANCASTER COUNTY TAX CLAIM BUREAU
v.
Salvatore N. VALENTI et al. (Two Cases) Appeal of Salvatore N. VALENTI and Paula J. Valenti, Appellants. (Two Cases)
Commonwealth Court of Pennsylvania.
Submitted September 6, 1991.
Decided December 19, 1991.
Reconsideration Denied February 12, 1992.
*240 Salvatore N. and Paula J. Valenti, pro se.
David E. Greer, for appellee.
Mark Stanley, for amicus curiae, Ephrata Diamond Spring Water Co.
Before PALLADINO and BYER, JJ., and SILVESTRI, Senior Judge.
SILVESTRI, Senior Judge.
On November 27, 1990, the Lancaster County Tax Claim Bureau (Tax Bureau) held a judicial tax sale at which the property[1] of Salvatore and Paula Valenti (collectively, Valentis) was sold to Ephrata Diamond Spring Water Company (Ephrata) because of the Valentis' failure to pay taxes.[2] The Tax Bureau subsequently presented a Petition for Confirmation of Judicial Tax Sale to the court of common pleas of Lancaster County (trial court) who entered a decree nisi on January 25, 1991, confirming the judicial sale. On February 20, 1991, the Valentis filed a petition to set aside the judicial sale, entitled "Petition To Set Aside Tax Sale On November 27, 1990, Of Petitioner's Property, Due To Failure Of Lancaster County Tax Claim Bureau To Comply With The Notice Requirements Under Section 5860.602 Of The Real Estate Tax Law" (Petition).
On March 21, 1991, the trial court issued a Rule Absolute which found that the Valentis attempted to evade service by *241 the Tax Bureau of a Petition for Approval of Judicial Sale; confirmed the propriety of the judicial sale held November 27, 1990; and, ordered the Tax Bureau to convey title to Ephrata, the purchasers of the realty in question. In this consolidated action, the Valentis' appeal the Rule Absolute of the trial court issued at action No. 3217 and action No. 3218.
The Valentis raise four issues before this Court. The first three issues involve their declaration that they are American freemen and are not subject to the taxing laws of the Commonwealth of Pennsylvania or the jurisdiction of Pennsylvania courts.[3] However, these issues were not raised by the Valentis in their Petition to the trial court. The courts of this Commonwealth have a long-standing rule prohibiting the introduction of new issues at the appellate level. As these issues were not raised previously, they are waived. See Reilly v. Southeastern Pennsylvania Transportation Authority, 507 Pa. 204, 489 A.2d 1291 (1985); Dilliplaine v. Lehigh Valley Trust Company, 457 Pa. 255, 322 A.2d 114 (1974).
The only remaining issue(s)[4] raised by the Valentis concern whether the Tax Bureau gave valid notice of the upset sale and judicial tax sale of their property. In tax sale cases, our review is limited to determining whether the trial court abused its discretion, rendered a decision without supporting evidence, or clearly erred as a matter of law. *242 Financial Management Professional Corp. v. Tax Claim Bureau of Monroe County, 121 Pa.Commonwealth Ct. 205, 550 A.2d 601 (1988).
Notice requirements for upset sales and judicial sales are set forth in the Real Estate Tax Sale Law (Law).[5] Section 602 of the Law, 72 P.S. § 5860.602, requires a tax bureau to provide for the following notice when scheduling an upset sale:
(a) At least thirty (30) days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.
. . . . .
(e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:
. . . . .
(1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.
(2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making *243 the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.
(3) Each property scheduled for sale shall be posted at least ten (10) days prior to the sale.
. . . . .
(h) No owner shall attack the validity of any sale on the basis that the bureau failed to give the notice required by this section.
No sale shall be defeated and no title to property sold shall be invalidated because of proof that mail notice as herein required was not received by the owner, provided such notice was given as prescribed by this section.

. . . . .
Thus, under Section 602, notice requirements of an upset sale are threefold: notice by publication, notice by certified mail, and notice by posting property.
Review of the record indicates proper notice of the 1988 upset sale was given to the Valentis. Cosimo Forte, deputy treasurer and director of the Tax Bureau, testified generally that the three notice requirements of Section 602 were complied with. When questioned as to whether valid notice of the upset sale was given to the Valentis, Mr. Forte responded:
Mr. Forte: Well, when the '86 taxes were turned in delinquent to the Bureau, we sent out a notice of claim in May of '87, and we have the certified card signed by Mr. Valenti.
. . . . .
Mr. Forte: When no payments were received in 1988, we exposed the property  the three properties to an upset sale. July of '88 we sent out certified mail stating when the sale would be held and where it would be held. In August we advertised in the local newspapers about a sale. We gave the Sheriff's Office personal service forms to be served on Mr. Valenti and Mrs. *244 Valenti. We had the Sheriff's Office post the property for sale in '88 
. . . . .
Counsel: Okay. So we have a certified mail signed, the advertisements, personal service and, you said, posting?
Mr. Forte: The posting notice was done August 22nd, '88, and it was sworn by Arlene Hughes in the Sheriff's Office that they posted the property for sale.
. . . . .
Transcript of Proceedings at pp. 7-9.
Further testimony of Mr. Forte demonstrates that the specific requirements of publication, certified mail and posted notice also occurred.
Counsel: Section 602 of the Tax Sale Act that governs notice in an upset sale has a certain list of items that are required to be in the advertisement. If I read those items to you, can you verify that those items, in fact, appear in the advertisement?
Mr. Forte: Yes.
Counsel: Okay. Such notice of sale shall set forth the purposes of such sale, the time of such sale, the place of such sale, the terms of the sale, including the approximate upset price, the descriptions of the properties to be sold as stated in the claims entered, and the name of the owner.
Did those items appear in the advertisement?
Mr. Forte: That's correct.
Counsel: Okay. Turning to Section E of that  Subsection E of that same Section 602, you testified that the certified mail, restricted delivery, return receipt was given in July before the September sale?
Mr. Forte: That's correct.
Counsel: Therefore, it was more than 30 days before the sale?
Mr. Forte: That's correct.

*245 Counsel: It was posted August 22nd, which is more than 10 days prior to the September 27th sale?
Mr. Forte: That's correct.
Transcript of Proceedings at pp. 9-10.
As notice of the 1988 upset sale was proper, the Valentis' argument that the Tax Bureau did not comply with the Law must fail.
The Valentis also argue that the 1989 upset sale was deficient for lack of personal service. Upon review, all of the requirements for the 1989 upset sale were complied with up to the point of personal service. Mr. Forte's testimony reveals the 1989 upset sale was not held because there were inadequate bids. Consequently, the Tax Bureau continued the upset sale and proceeded with the judicial tax sale.
With regard to the judicial sale, we will now address the Valentis' assertion that the Tax Bureau did not comply with Section 602 notice provisions for service of the rule to show cause why their property should not be sold at a judicial sale. In support of this contention, the Valentis argue that because a judicial sale is a continuance of an upset sale, notice provisions of an upset sale under Section 602 apply with equal force to a judicial sale.
Our analysis reveals the Law distinguishes between upset sales and judicial sales. The Law references subarticle heading "(a) Upset Sale" added in 1986 just prior to Section 601, 72 P.S. § 5860.601. The subarticle heading "(b) Judicial Sale" was also added in 1986 and precedes Section 610, 72 P.S. § 5860.610. The notice provisions applicable to upset sales under Section 602 are clearly distinct from the service of rule provisions for judicial sales under Section 611.[6] Compliance with Section 602 notice provisions are inapplicable to a subsequent judicial sale proceeding.
*246 Finally, the Valentis contend that the trial court's ruling that they had actual notice of the judicial sale proceeding is contrary to the law and the facts. The facts are as follows. On August 3, 1990, the Tax Bureau petitioned the trial court for approval of the judicial tax sale of the Valentis' property. On the same date, the trial court entered a rule returnable to show cause to the Valentis. The Rule was sent by both first class and certified mail, return receipt requested. Both were returned unclaimed. The Tax Bureau then attempted to personally serve the Valentis through the Sheriff of Lancaster County. The Deputy Sheriff testified that drop service of the rule, order, and the petition for approval of judicial sale was made on August 8, 1990. On that date two deputy sheriffs attempted to serve the Valentis with the referenced documents. They knocked on both the front and back door of the Valentis' home, with no response. When the deputy sheriffs returned to their marked vehicle, Salvatore Valenti pulled into his driveway. Upon seeing the deputy sheriffs, he fled the property. Because it was clear to the one deputy sheriff that Salvatore Valenti had seen him with the documents in his hand, the deputy dropped the papers in the Valentis' driveway.
The Valentis acknowledge the existence of the documents in their driveway, but insist they did not read or review them. Salvatore Valenti also admitted that he intended to avoid service of the documents. Transcript of Proceedings at pp. 56-57. The Valentis further testified that they knew of the judicial sale proceeding prior to its occurrence. When a property owner has knowledge of the steps taken prior to the sale, he cannot be found to have *247 been misled to his harm. See Thompson v. Frazier, 159 Pa.Superior Ct. 395, 48 A.2d 6 (1946).
In its March 21, 1991 order, the trial court determined:
(1) Salvatore Valenti, individually and on behalf of his wife, Paula, wilfully [sic] attempted to evade service by the Lancaster County Tax Claim Bureau of the Petition for Approval of Judicial Sale under Section 5860.612 of the Real Estate Tax Sale Law and notice of Judicial Sale in the above-captioned matter; and
(2) Said Judicial Tax Sale conducted by the Lancaster County Tax Claim Bureau complied with the requirements of the Pa. Real Estate Tax Sale Law, 72 P.S. Section 5860.101 et seq. (1986, as amended) and specifically Sections 610, 611 and 612, relating to service of notice of judicial tax sales.
Upon review of the Valentis' actions, we are led to the same conclusion.
The order of the trial court is affirmed.

ORDER
AND NOW, this 19th day of December, 1991, the March 21, 1991 order of the Court of Common Pleas of Lancaster County is affirmed.
NOTES
[1] Though the sale involved both residential and commercial realty owned by the Valentis, we hereinafter reference them collectively as "property." The property at issue was before the trial court at actions No. 3217 and No. 3218 of 1990. However, the cases were consolidated on appeal to this Court by order dated June 25, 1991.
[2] The property was first exposed to an Upset Tax Sale in 1988 and 1989. However, no minimum bids covering taxes and costs were received because of heavy liens on the property.
[3] In their statement of questions involved, the Valentis state these issues as: I. Does the taxing power of the Commonwealth of Pennsylvania extend to the Appellants, who are non-resident aliens to the Commonwealth of Pennsylvania? II. Does the venue of the Lancaster County Court of Common Pleas extend to the Appellants, who are non-resident aliens to the Commonwealth of Pennsylvania and non-residents of Lancaster County? and III. Did the Lancaster County Court of Common Please [sic] have jurisdiction to hear the matter which is the basis of this appeal?
[4] The fourth issue in the Valentis' statement of questions involved, "Did the Lancaster County Tax Claim Bureau comply with the notice provisions of the Real Estate Tax Sale Law?" contains several subissues. These include notice as to the 1988 and 1989 upset sales, notice as to the rule to show cause for the judicial sale, and actual notice of the judicial sale.
[5] Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. §§ 5860.101-5860.803.
[6] Section 611 provides:

Service of the rule shall be made in the same manner as writs of scire facias are served in this Commonwealth. When service cannot be made in the county where the rule was granted, the sheriff of the county shall deputize the sheriff of any other county in this Commonwealth, where service can be made. If service of the rule cannot be made in this Commonwealth, then the rule shall be served on the person named in the rule by the sheriff, by sending him, by registered mail, return receipt requested, postage prepaid, at least fifteen (15) days before the return day of the rule, a true and attested copy thereof, addressed to such person's last known post office address. The sheriff shall attach to his return, the return receipts, and if the person named in the rule has refused to accept the registered mail or cannot be found at his last known address, shall attach evidence thereof. This shall constitute sufficient service under this act. (Footnote omitted.)