### Carole SABBETH

v.

### TAX CLAIM BUREAU OF FULTON COUNTY and Genwove U.S., Ltd., Appellants.

Commonwealth Court of Pennsylvania.

Argued April 16, 1998.

Decided June 29, 1998.

Reargument Denied Aug. 24, 1998.

---

Stanley J. Kerlin, McConnellsburg, for appellant, Tax Claim Bureau of Fulton County.

Charles E. Bobinis, Pittsburgh, for appellee and Daniel M. Campbell, Harrisburg, for appellant Genwove U.S. Ltd.

Before SMITH and FRIEDMAN, JJ., and McCLOSKEY, Senior Judge.

McCLOSKEY, Senior Judge.

The Tax Claim Bureau of Fulton County (Bureau) and Genwove U.S., Ltd. (Genwove) appeal from an order of The Court of Common Pleas of the Thirty–Ninth Judicial District, Fulton County Branch (trial court), finding exception to the validity of a tax sale of property owned by Carole Sabbeth (Sabbeth). We reverse.

On September 30, 1996, the Bureau, pursuant to the Real Estate Tax Sale Law (Tax Sale Law),[1] conducted a tax sale at which a parcel of land (subject property) located in Fulton County and owned by Sabbeth was sold. Genwove purchased the subject property.

Prior to 1994, all taxes on the subject property were paid. The taxes were not paid in 1994 and 1995. Notice of the arrearages were sent to Sabbeth, posted on the subject property and published in newspapers of general circulation.

On August 5, 1996, notice of public sale was sent by certified mail to Sabbeth. An employee of Sabbeth's husband's company (company) signed for the notice. The employee then placed the notice on Sabbeth's desk in her office at the company. It was company custom to place in-coming mail upon Sabbeth's desk for her review. Sabbeth had previously been employed at the company and continued to frequent her office there on a weekly basis. On August 23, 1996, after posting and publishing numerous notices, the Bureau sent a final notice to Sabbeth by regular mail.

On September 30, 1996, the day of the tax sale, Sabbeth claims to have read the notice sent to her by certified mail for the first

1. Act of July 7, 1947, P.L. 1368, *as amended,* 72　　P.S. §§ 5860.101–5860.803.

time. This was fifty-three days after the notice had been signed for and placed on Sabbeth's desk for her review. Upon reading the notice, Sabbeth contacted the Bureau regarding the delinquent taxes. Sabbeth was informed that the subject property had been sold to Genwove. Sabbeth then inquired about redemption of the subject property.

Sabbeth filed exception to the tax sale on October 17, 1996. She alleged technical difficulties in the notice sent to her by regular mail. On December 17, 1996, Genwove intervened as a party respondent.

On August 21, 1997, a hearing was held. The trial court found that the Bureau had failed to strictly comply with the Tax Sale Law requirements.[2] The instant appeal followed.

■ On appeal to this Court,[3] the Bureau asserts that the trial court's finding that the notice of tax sale sent to Sabbeth was not read until the day of the sale is not supported by substantial evidence. The Bureau argues that there is no evidence to support Sabbeth's testimony, which is completely self-serving and too incredible to believe.[4] Specifically, the Bureau contends that the facts of the instant case do not allow a reasonable person to find that Sabbeth did not open the notice of tax sale for fifty-three days after receipt and until the very day of the tax sale. This is especially true in light of the fact that Sabbeth had been in the office several times a week to do such things as sort through the mail.

■ This Court notes that the Bureau's assertion pertains to Sabbeth's credibility. It is well-settled that this Court is bound by the credibility determinations of the trial court.[5] Therefore, we will not address this argument on appeal.

The Bureau next argues that all statutory requirements of notice in a tax sale do not

---

2. 72 P.S. § 5860.602 provides in pertinent part:

   (a) At least thirty (30) days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.

   . . .

   (e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:

   (1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.

   (2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes.

   (3) Each property scheduled for sale shall be posted at least ten (10) days prior to the sale.

   . . .

   (g) All notices required by this section other than the newspaper notice and notice in the legal journal shall contain the following provision which shall be conspicuously placed upon said notices and set in at least 10–point type in a box as follows:

   WARNING

   "YOUR PROPERTY IS ABOUT TO BE SOLD WITHOUT YOUR CONSENT FOR DELINQUENT TAXES. YOUR PROPERTY MAY BE SOLD FOR A SMALL FRACTION OF ITS FAIR MARKET VALUE. IF YOU HAVE ANY QUESTIONS AS TO WHAT YOU MUST DO IN ORDER TO SAVE YOUR PROPERTY, PLEASE CALL YOUR ATTORNEY, THE TAX CLAIM BUREAU AT THE FOLLOWING PHONE NUMBER _____, OR THE COUNTY LAWYER REFERRAL SERVICE."

3. Our standard of review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence, or clearly erred as a matter of law. *Matter of Tax Sales*, 651 A.2d 1157 (Pa.Cmwlth.1994), *petition for allowance of appeal denied*, 544 Pa. 650, 664 A.2d 978 (1995).

4. (R.R. at 77a–101a).

5. *Mooney v. Department of Transportation, Bureau of Driver Licensing*, 654 A.2d 47 (Pa. Cmwlth.1994).

need to be met where actual notice exists. The Bureau asserts that actual notice requires only proof that the notice was actually *received;* it does not require proof that the notice was actually *read.* It is argued that the trial court's finding to the contrary sets an absurd precedent, establishes a standard practically impossible of being proven and provides debtors with a ready defense to creditors. Regarding Sabbeth, the Bureau contends that it is undisputed that Sabbeth *received* the notice and that she therefore had actual notice of the tax sale. It is asserted that Sabbeth's actual notice eliminates the Bureau's burden to meet all statutory notice requirements.

■ Preliminarily, this Court notes that because the Bureau admittedly did not comply with all statutory notice requirements, the tax sale of the subject property is valid only if Sabbeth received actual notice of the sale.[6] Case law discussing what constitutes actual notice appears to be fact specific and does not set forth a definition of the term. *See City of McKeesport v. Delmar Leasing Corporation,* 656 A.2d 180 (Pa.Cmwlth.1995), *petition for allowance of appeal denied,* 542 Pa. 636, 665 A.2d 470 (1995); *Lancaster County Tax Claim Bureau v. Valenti,* 144 Pa.Cmwlth. 238, 601 A.2d 445 (1991), *petitions for allowance of appeal denied,* 533 Pa. 621, 619 A.2d 702 (1993), 533 Pa. 647, 622 A.2d 1378 (1993).

■ Black's Law Dictionary 1061–1062 (6th ed.1990) defines actual notice as follows:

Actual notice has been defined as notice expressly and actually given, and brought home to the party directly. The term "actual notice," however, is generally given a wider meaning as embracing two classes, express and implied; the former includes all knowledge of a degree above that which depends upon collateral inference, or which imposes upon the party the further duty of inquiry; the latter imputes knowledge to the party because he is shown to be conscious of having the means of knowledge. In this sense actual notice is such notice as is positively proved to have been given to a party directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry.

Because we agree that the definition of actual notice encompasses both *express* actual notice and *implied* actual notice, we conclude that the trial court erred when it held that Sabbeth's inquiry notice was not actual notice.

■ The record is replete with facts which show that Sabbeth had implied actual notice of the tax sale and therefore had a duty to undertake further inquiry. Sabbeth was certainly aware of the jeopardy that the subject property was facing. Sabbeth had previously paid taxes on the subject property, but then failed to pay the taxes for a period of two years. That Sabbeth had previously paid the taxes assessed on the subject property leads to the conclusion that she knew taxes were assessed on the property. Knowing such, Sabbeth would have had to conclude that the non-payment of assessed taxes would result in consequences of some sort.

Additionally, the circumstances under which Sabbeth asserts that she was without actual notice of the tax sale are nothing short of incredible. Sabbeth received notices for two years stating that the taxes assessed on the subject property were in arrears. Sabbeth worked directly across the street from the subject property on which notices were posted stating that the subject property was subject to tax sale. Most importantly, Sabbeth regularly went to her office to review the mail. It was in this office where a certified letter of notice from the Bureau remained upon her desk unattended for fifty-three days until its discovery the very day of the tax sale.

The trial court found that Sabbeth had inquiry notice of the tax sale, but erred when it found that Sabbeth had no actual notice. In essence, the trial court held that actual notice only exists if an individual receives *express* notice. We do not agree. As implied notice is encompassed in the definition of actual notice, the trial court erred when it concluded that Sabbeth's implied notice did not constitute actual notice.

6. *Matter of Tax Sales.*

Because the circumstances of the instant action show that Sabbeth had actual notice of the tax sale of the subject property but sought to avoid the consequences of her inaction by claiming complete ignorance, strict compliance with the statutory notice requirements was waived and the tax sale of the subject property was valid.

Accordingly, the order of the trial court is reversed.

### ORDER

AND NOW, this 29th day of June, 1998, it is hereby ordered that the order of The Court of Common Pleas of the Thirty–Ninth Judicial District, Fulton County Branch, finding exception to the validity of a tax sale of property owned by Carole Sabbeth is REVERSED.