SANTARELLI REAL ESTATE, INC., Appellant,

v.

TAX CLAIM BUREAU OF LACKAWANNA COUNTY.

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 2004.

Decided Feb. 2, 2005.

James P. Gregorowicz and James M. Scanlon, Scranton, for appellant.

David Z. Smith, Moscow, for appellee.

BEFORE: COLINS, President Judge, PELLEGRINI, J., and COHN JUBELIRER, J.

OPINION BY Judge COHN JUBELIRER.

Santarelli Real Estate, Inc., (Appellant) appeals from an order of the Court of Common Pleas of Lackawanna County (common pleas), which, *inter alia,* dismissed its complaint seeking performance of an agreement of sale, conveyance of title, and deliverance of deed and declared null and void a tax sale against former owner Paul Kotchko (Kotchko), who was deceased.

At issue in this appeal are an unsuccessful public tax sale and an unconfirmed private tax sale, instituted pursuant to the Real Estate Tax Sale Law (Tax Sale Law),[1] of property deeded to the deceased Kotchko.[2]

In 2003, because of delinquent real-estate taxes, the Lackawanna County Tax Claim Bureau (Tax Claim Bureau) listed the Kotchko property (Property) for public tax sale. The Tax Claim Bureau mailed, on July 9, 2003, via certified mail, notice of the public tax sale to the owner of the property, Kotchko, who was then deceased, and physically posted notice (Tr. at 120–21) on the Property.[3] (Tr. at 31.) The notice sent via certified mail was returned to the Tax Claim Bureau, with "Deceased 7–18–2003" marked on the returned envelope, along with a forwarding address[4] to Veronica Balog (Balog), the last surviving joint tenant with right of survivorship of the property.[5] The Tax Claim Bureau did not produce evidence of any subsequent attempt(s) to contact Balog or another representative of the Kotchko estate

---

1. Act of 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101–5860.803.

2. The record does not establish an exact date for the death of Kotchko although, Arlene Miller, his niece and agent for Veronica Balog (joint tenant of the Property), indicated on direct examination that he died, approximately, in 1993. (Tr. at 96.)

3. Gary Ado Propersi, Director of Lackawanna County Tax Claims, testified that his file concerning the Property, which contains all information kept by the Tax Claim Bureau, did not contain evidence of whether notice appeared in local publications. (Tr. 32, 34.)

4. There is no evidence in the record that the Tax Claim Bureau mailed a notice to the forwarding address.

5. Appellant concedes in its brief to this Court that the deed to the Property lists Paul Kotchko, Jr., Michael Kotchko, Anna Kotchko, Mildred Kotchko, and Veronica Balog as joint tenants with the right of survivorship. (Appellant Br. at 6.)

at either the forwarding address or another address. (Tr. at 36.)

On September 20, 2003, the Tax Claim Bureau conducted a public sale of the Property, exposing it at its upset price.[6] No one submitted a bid to purchase the Property. Where a public sale fails to produce a buyer, Section 613 of the Tax Sale Law, 72 P.S. § 5860.613, authorizes the Tax Claim Bureau to sell the property through a private sale. On December 19, 2003, Victor and Tamara Santarelli submitted to the Tax Claim Bureau a bid to purchase the Property for $5,500.00. Submission of this bid came on a one-page paper with the introductory title: "Offer to Purchase Private Sale Real Estate Owned By The County Of Lackawanna Tax Claim Bureau"[7] (Bid Sheet). Appellant then paid the required advertising fee of $220.00 for the Section 613 private sale notice requirements. The Bid Sheet listed Victor and Tamara Santarelli as "bidders" for the Property, listed Lackawanna County as "title owner," and Kotcho[8] as "assessed owner." Payment of this advertising fee is the only expenditure made by Appellant towards the purchase of the Property. Thomas Walsh, Director of the

Tax Claim Bureau of Lackawanna County, accepted and approved the price listed on the Bid Sheet in September 2003. (Tr. at 105–06.)

The Tax Claim Bureau, on December 22, 2003, provided notice concerning the unconfirmed private sale by advertising[9] Appellant's bid for sale with the Lackawanna Jurist, and by posting notice on the Property. (Tr. at 13–15.)

On December 26, 2003, both Arlene Miller (Miller), who is Balog's daughter,[10] and the Lackawanna County Redevelopment Authority (Redevelopment Authority)[11] submitted letters to the Tax Claim Bureau requesting the removal of the Property from future tax sales and asking the Bureau not to accept any outside bids. Miller also informed the Tax Claim Bureau that future profits[12] derived from the sale of the Property to the Redevelopment Authority would be used to satisfy all delinquent taxes. Following receipt of these two letters,[13] the Tax Claim Bureau refused to complete the sale of the Property to Appellant.

Appellant filed a complaint on February 25, 2004 in common pleas seeking, *inter*

---

6. Section 605 of the Tax Sale Law defines "upset price" as the total amount of delinquent taxes on the property. 72 P.S. § 5860.605.

7. Propersi testified that no other bids were received for the Property. (Tr. at 9–10.)

8. Kotchko's name is improperly spelled on the Bid Sheet.

9. The record is not clear whether notice of the private sale was provided, as required by Section 613 of the Tax Sales Law, in one newspaper of general circulation published in the county where the property is located; however, because of our disposition of this case, we need not address it.

10. Miller testified that she first received notice of the private sale when a representative

of the Redevelopment Authority contacted her and brought the letter, dated December 26, 2003, for her to sign. (Tr. at 98.)

11. There is evidence in the record that the Redevelopment Authority plans to condemn the Property in the near future.

12. William Coleman, Executive Director of the Lackawanna County Redevelopment Authority, testified that the heirs to the Property were offered $55,000.00 for the property. (Tr. at 42.)

13. Thomas Walsh testified that the private sale of the Property was canceled based on a letter from Jessup Borough challenging the sufficiency of the value/price of the Property, although this letter was not part of the Tax Claim Bureau's file for the Property. (Tr. at 124–25.)

*alia,* (1) an order for specific performance of an agreement of sale between the parties; (2) an order for conveyance to Appellant of title free, clear and discharged of all tax claims and tax judgments; and, (3) an order for the Tax Claim Bureau to sign, seal, acknowledge and deliver a deed to Appellant. On March 2, 2004, Appellant filed with common pleas a "Petition For Rule To Show Cause Why Private Tax Sale Shall Not Be Completed." Common pleas granted that motion and scheduled a hearing for April 8, 2004. ("Rule to Show Cause Hearing".)

On April 6, 2004, Appellant filed an amended complaint, pleading a new cause of action: a mandamus action seeking common pleas to order the Tax Claim Bureau to forward a deed for the Property to the Santarellis. That same day, the Tax Claim Bureau filed an answer to Appellant's petition and asserted, as new matter, that notice of the public sale was not properly effectuated, pursuant to Section 5860.602(e) of the Tax Sale Law,[14] to the owner of the Property, Balog, as her address appeared on the returned notice sent via certified mail to Kotchko. Appellant replied to the new matter on April 8, 2004. On April 7, 2004, Balog petitioned for allowance, *nunc pro tunc,* to file objections and exceptions to the sale of the Property. Common pleas, on the same day, also scheduled Balog's *nunc pro tunc* petition to be heard on April 8th at the Rule to Show Cause Hearing. Thus, arguments on *the two separate petitions* were heard on April 8, 2004. At the hearing, common pleas allowed Miller to testify, under a Power of Attorney for her mother, that Balog had never brought to Miller's attention any mailing from the Tax Claim Bureau. Common pleas overruled hearsay objections made by counsel for Appellant.

Common pleas, at the end of the hearing, issued its decision from the bench, denying Appellant's request for mandamus and delivery of the deed to the Property and directing that there be no sale of the Property to Appellant because of the Tax Claim Bureau's failure to provide notice of the public sale. (Tr. at 151–52.) Appellant, subsequently, filed a Motion for Post Trial Relief seeking: 1) a new trial, claiming an inability to conduct pretrial discovery of Intervenor Balog; or 2) a judgment

---

**14.** Section 602 of the Tax Sale Law, provides, in relevant part:

(a) At least thirty (30) days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.

\* \* \* \*

(e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:

(1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.

(2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

72 P.S. § 5860.602(a), (e).

entered in its favor, claiming it established that Balog had adequate notice of the public sale. On April 20, 2004, common pleas issued its formal order, which dismissed Appellant's complaint in equity and mandamus, declared null and void the sale of the Property, and ordered the Kotchko Estate to reimburse Appellant the cost of advertising the Property. Also, on April 20, 2004, common pleas denied Appellant's motion for post-trial relief. On July 21, 2004, common pleas issued its opinion explaining its reasons for voiding the tax sale of the Property based on the Tax Claim Bureau's failure to give notice of the public sale to the owner of the property as required by Section 602 of Tax Sale Law. (Trial Ct. Op. at 14–16.) [15]

The basis of common pleas' formal opinion was its determination that the Tax Claim Bureau had failed to provide Balog with notice of the public sale and, due to this failure, the Property was never "exposed" at a public sale, so there could be no private sale. (Trial Ct. Op. at 15–16.) Appellant filed a timely appeal of that decision to this Court.

■ As a preliminary matter, we recognize that our standard of review in a tax sale case is limited to determining whether the trial court abused its discretion, rendered a decision lacking supporting evidence, or clearly erred as a matter of law. *See, e.g., Casaday v. Clearfield County*

*Tax Claim Bureau,* 156 Pa.Cmwlth. 317, 627 A.2d 257 (1993).

Appellant attempts to focus this Court's analysis on issues surrounding the private sale of the Property. However, before this Court can address issues surrounding the private tax sale, there must be a determination of the existence of a valid public tax sale. A valid public tax sale is a prerequisite for the consideration of a private tax sale under Section 613 of the Tax Sale Law. *See Rivera v. Carbon County Tax Claim Bureau,* 857 A.2d 208 (Pa. Cmwlth.2004) (holding that divestiture of ownership following exposure of property at a public tax sale cannot occur when the notice provisions for a public tax sale are not strictly complied with). Therefore, we must necessarily first determine that the Property was "exposed at public sale" before we can address the private sale.

The Tax Claim Bureau conceded before common pleas, and in its answer to Appellant's petition for rule to show cause, that it did not give Balog, owner of the Property, notice of the public sale. However, Appellant argues here that Balog's failure to pay taxes on the Property constituted implied actual notice of the public sale, and that it should have had the opportunity to conduct further discovery on whether she had notice and, as an alternative argument, that Balog abandoned the Property.[16]

---

**15.** Appellant makes several arguments concerning the propriety of common pleas allowing Balog to file and argue *nunc pro tunc* objections. However, this Court notes that *nunc pro tunc* objections did not form the basis of any ruling of common pleas in this matter.

**16.** Appellant raised issues concerning Balog's ability to file objections to the public sale and the potential existence of a binding contract for sale resulting from the offer to bid on the private sale. Appellant argued in common pleas, and in his brief to this Court, that

because the private sale was confirmed nisi and absolute, and no objections were lodged with common pleas within the statutorily required 45 days, it was too late to file a petition to set aside the public sale. (Tr. at 89.) Nonetheless, this argument is clearly without merit because this Court has held that where notice is improperly effectuated, the public sale is void, not voidable. *County of Schuylkill, v. Ryon,* 143 Pa.Cmwlth. 285, 598 A.2d 1075 (1991), *petition for allowance of appeal denied,* 530 Pa. 662, 609 A.2d 169 (1992). Once the Tax Claim Bureau conceded that

■ As previously stated, in order for there to be a valid public sale, there must be evidence establishing compliance with the notice requirements found in Section 602 of the Tax Sale Law. (March 2, 2004 Rule to Show Cause); *see also Krawec v. Carbon County Tax Claim Bureau*, 842 A.2d 520 (Pa.Cmwlth.2004). Usually, it is the Tax Claim Bureau that establishes notice to the record owner—here Balog of an impending public tax sale. However, in this case, after Appellant filed its "Petition For Rule To Show Cause Why Private Tax Sale Shall Not Be Completed," the Tax Claim Bureau filed an answer stating that it had *not,* in fact, complied with the notice requirements. At trial, the Tax Claim Bureau could not produce either a return receipt from certified mail sent to Balog, a copy of a first class letter mailed to her address,[17] or any notation in its records that any notice had been sent. Thus, unless Appellant could demonstrate that Balog otherwise received actual notice, in the absence of statutory notice to the owner, the public sale was void. *Hunter v. Washington County Tax Bureau*, 729 A.2d 142, 143 (Pa.Cmwlth.1999) (finding that "[n]otice provisions [of the Tax Sale Law] are to be strictly construed and strict compliance with such provisions is necessary to guard against deprivation of property without due process, and if any one method of notice is defective, the sale is void").

Once the Tax Claim Bureau established that its files relating to the Property did not contain evidence of compliance with the notice requirements of Section 602 of the Tax Sale Law, the burden to establish that Balog, nonetheless, had notice shifted to Appellant, the only party seeking consummation of its bid offer. At trial, however, Appellant failed to produce any evidence that either the Tax Claim Bureau notified Balog or that Balog possessed actual notice of the public sale. Instead, it asserted that Balog's "knowing failure" to pay the taxes provided her with notice that there will be a public sale of the Property. Appellant cites this Court's decision in *Sabbeth v. Tax Claim Bureau of Fulton County*, 714 A.2d 514, 517 (Pa.Cmwlth. 1998), for the proposition that Balog possessed implied actual notice. However, the facts of that case are clearly distinguishable. In *Sabbeth,* the certified letter from the Tax Claim Bureau was delivered to the property owner's former office, where she continued to check her mail weekly. A company employee placed the letter on Sabbeth's desk, where it remained unread for nearly two months. Based on these facts, the Court in *Sabbeth* found that failure to open and read notice sent via certified mail is not a defense and held that the property owner has implied actual notice. *Id.* In contrast, here, there is no dispute that the certified letter was never sent to Balog.

Appellant also contends that "to allow Veronica Balog to file and prove objections

their files relating to the Property could not establish conformity with Section 602 notice requirements, the public sale was void and title effectively returned to Balog. Under Section 613(a), a precondition to a private sale is that the property first be "exposed to public sale," and, because no legally proper exposure occurred due to the defective notice, the private sale is, *a fortiorari,* void. Therefore, arguments as to objections to voided sales and the existence of a binding contract resulting from, *arguendo,* a private sale agreement are clearly without merit and irrelevant

to this appeal. Furthermore, Appellant testified that in performing a title search, it learned that Balog's name was on the deed.

17. Thomas Walsh testified that when certified notices are returned, the Tax Claim Bureau mails some form of pre-printed or handwritten letter, via first class mail, but there is nothing in the record that indicates such a letter was sent to Balog, or the contents of that letter. (Tr. at 143.)

to the public sale on a day that was set for enforcement of the private sale contract deeply prejudiced the Santarelli case." (Appellant Br. at 19.) However, Appellant misunderstands what actually occurred: the public sale was not invalidated on the basis of Balog's objections. The Tax Claim Bureau, *two days before the hearing,* raised the issue of inadequate notice, as new matter, in its answer to Appellant's petition for rule to show cause. Appellant, moreover, filed an answer to the new matter. Thus, even in the absence of Balog's objections, the issue of notice would have remained a salient issue at the hearing, and Appellant was aware of the Tax Claim Bureau's argument. Common pleas did not grant Balog's petition to file, *nunc pro tunc* objections; it did not need to. The Tax Claim Bureau established the lack of notice to Balog, which was never rebutted by Appellant.

■ Appellant also argues in its post trial motions and before this Court, that common pleas' decision to allow Miller, through Balog's power of attorney, to testify violated basic notions of fairness because it did not have the opportunity to conduct discovery, depose or elicit testimony from Balog about the receipt of notice. However, Appellant, despite its two days foreknowledge of the Tax Claim Bureau's intent to argue failure of notice, raised only *hearsay* objections to Miller's testimony at trial and did not, at any time during trial, raise the issue of unfair surprise. Not having preserved the issue of unfair surprise at trial,[18] the issue is, thus,

waived. Pa. R.A.P. 302; *see also Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974).

■ Appellant also argues that Balog abandoned the Property. However, Appellant did not raise the issue of abandonment at trial; therefore, it cannot be argued for the first time before our Court. Pa. R.A.P. 302; *see also Dilliplaine.*

Based on the failure of Appellant to refute the Tax Claim Bureau's position that it did not provide Balog with notice of the public sale, common pleas correctly held that the public sale was void and, therefore, the private sale was also void. For these reasons, we affirm the order of common pleas,[19] which declared null and void the tax sale.[20]

### ORDER

NOW, February 2, 2005, the order of the Court of Common Pleas of Lackawanna County in the above-captioned matter hereby affirmed.

---

18. Furthermore, as we do not rely on Miller's testimony in our opinion, any error regarding her testimony would be harmless.

19. In its opinion, common pleas noted that counsel for Appellant was previously solicitor for the Tax Claim Bureau and, in his capacity as solicitor, prepared the notices issued for the public sale of the Property. (Trial Ct. Op. at 8–9.)

20. Appellant and the Tax Claim Bureau also argue whether the Tax Claim Bureau has discretion to complete a private sale, in the absence of any infirmity in either the public or private sale; however, due to our disposition of this case we do not address that issue.