IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Bosch and                         :
Rosemarie Bosch                          :
                                         :
                                         :   No.   192 C.D. 2022
              v.                         :
                                         :   Submitted:  February 10, 2023
Tax Claim Bureau of Monroe               :
County and Jason Keller                  :
                                         :
Appeal of: Jason Keller                  :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE STACY WALLACE, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED: November 16, 2023


            Jason Keller (Keller), the purchaser of property at a tax sale, appeals *pro se* from the January 27, 2022 order of the Court of Common Pleas of Monroe County (trial court), which granted the Petition to Set Aside Tax Claim Sale (Petition) filed by Joseph Bosch and Rosemarie Bosch.  Upon review, we affirm.

## **Facts and Procedural History**

            Mr. and Mrs. Bosch reside at 1 Middletown Street, Riverside, New Jersey 08075.  The Boschs are the owners of a property located at 117 Shady Pine Lane, Pocono Lake, Pennsylvania 18347 (Property).  On June 29, 2021, a Notice of Public Tax Sale was sent to "Bosch Joseph" at 321 Middletown Street, Riverside, NJ 08075 by United States (U.S.) certified mail stating that the Property was subject to upset sale for unpaid 2019 taxes.  The return receipt was signed by Mr. Bosch.  A Notice of Public

Tax Sale was sent on June 29, 2021, to "Bosch Rosemarie" at 321 Middletown Street, Riverside, NJ 08075. The return receipt was also signed by Mr. Bosch. Mrs. Bosch did not sign the return receipt, and Mr. Bosch signed the return receipt without consulting Mrs. Bosch. Mr. Bosch signed his own name, not his wife's name. On July 10, 2021, a Notice of Tax Sale was posted on the Property. A Notice of 2021 Public Delinquent Tax Sale was also published in the Pocono Record and the Monroe Legal Reporter on August 13, 2021.

In August 2021, Mr. Bosch spoke with a representative from the Monroe County Tax Claim Bureau (Bureau) to determine the total amount of taxes due. The representative told Mr. Bosch that the total amount of taxes due was $4,975.75. Mr. Bosch was told by the representative from the Bureau that $2,747.00 was due by September 15, 2021, to prevent the Property from being sold. Mr. Bosch was instructed to pay $743.10 by September 15, 2021, and monthly installments of $248.00 until the entire amount was paid in full. After Mr. Bosch's conversation with the representative from the Bureau, Mr. Bosch told Mrs. Bosch that taxes were delinquent and that he was working on paying the delinquent taxes. On September 14, 2021, Mr. Bosch sent a payment of $745.00[1] to the Bureau, via overnight priority mail. The Bureau received the check on September 15, 2021, at 11:45 a.m., one hour after the Property had been sold by upset sale to Keller. (Trial Court, Findings of Fact (FOF) 1-12.)

On October 13, 2021, Mr. and Mrs. Bosch filed the Petition based on lack of notice under Section 602(e)(1) of the Real Estate Tax Sale Law (RETSL).[2] Mr. and Mrs. Bosch filed verifications stating that the following facts were true and correct:

---

[1] Evidently, Mr. Bosch rounded the $743.10 amount to $745.00.

[2] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5680.602(e)(1). Section 602(e)(1) of the RETSL provides that the Bureau, "at least thirty (30) days before the date of the tax sale, shall **(Footnote continued on next page…)**

7. In early to mid-August, 2021, Petitioner Joseph Bosch spoke with a representative from the [Bureau] to determine the total amount of taxes due. The representative told Mr. Bosch that the total amount of taxes due was $4,975.50.

8. **Petitioners** were told by representatives from the Bureau that $2,747.00 was due by September 15, 2021 to prevent the Property from being sold.

9. **The Petitioners** were further told to pay $743.10 with equal payments of $248.00 until the entire amount of $2,747.00 was paid in full.

10. Due to a financial hardship, Mr. and Mrs. Bosch sent payment of $745.00 to the Bureau on September 14, 2021, via overnight mail.

11. The [Bureau] received the check on September 15, 2021, at 11:45 AM.

12. Unbeknownst to Mr. **and Mrs. Bosch**, who believed the payment of $745.00 would arrive before 10:00 AM on September 15, 2022, and **would stop the sale**, the payment was untimely by an hour and the Property was sold.

****

give notice by certified mail, personal addressee only, return receipt requested, to each owner of the land to be sold." 72 P.S. § 5680.602(e)(1). Section 602(e)(2) of the RETSL provides in part:

> If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given **to each owner** who failed to acknowledge the first notice by United States certified mail, personal addressee only, return receipt requested, postage prepaid, at his last known post office address . . . .

72 P.S. § 5680.602(e)(2) (emphasis added).

20. Here, it is clear that **Mrs. Bosch did not receive the required mail by the [Bureau] and did not personally know the Property was going to be sold at exactly 10:00 AM on September 21, 2021**.

(Reproduced Record (R.R.) at 4a, 7a) (emphasis added).

A hearing was held before the trial court on January 5, 2022. Both Mr. and Mrs. Bosch testified. Mr. Bosch testified that he signed his name on the return receipt for the notice of tax sale addressed to Mrs. Bosch. He testified:

> Q. I'm actually showing you two, one of which was addressed to Bosch, Rosemarie, and the second one addressed to Bosch, Joseph, same day. Mr. Bosch, are those your signatures on both documents?
>
> A. Yes.

*Id.* at 73a-74a.

Mr. Bosch testified that he, alone, had the conversation with the Bureau about the date and time of the sale and they made a verbal agreement regarding the amount he needed to pay. *Id.* at 89a. With respect to what exactly his wife knew, Mr. Bosch testified that she knew from their conversations that the taxes were delinquent and that they had to send a certain amount of money in by a certain date. *Id.* at 85a. He was not certain whether she actually knew that the Property was subject to tax sale on September 15, 2021. *Id.* at 85a-86a. Mr. Bosch testified that pursuant to his discussion with the Bureau representative, he sent a payment for $745.00 to the Bureau on September 14, 2021, by priority mail, for delivery September 15, 2021. *Id.* at 75a.

Mrs. Bosch testified that she did not receive or review a notice of tax sale sent by the Bureau. *Id.* at 88a-89a. She testified that she had conversations with her husband about the delinquent taxes and believed he was taking care of getting the taxes paid. *Id.* at 95a. She explained that the first time she knew of a threatened tax sale was

4

in late August 2021. *Id.* at 97a. She explained: "I knew that the taxes were due that were outstanding, and he handles that [P]roperty. That's all that I knew, that he was handling it." *Id.* at 95a. She testified that she never had a conversation with any representative from the Bureau regarding the delinquent taxes. *Id.* at 89a. She testified that she only knew that if the Bureau received a payment before September 15, 2021, that the Property would not be exposed to the sale. *Id.* at 91a-92a. No one from the Bureau told her that the amount of $743.10 was to be paid at the Bureau before 9:00 a.m., on September 15, 2021. *Id.* at 92a. She testified that, had she received a letter from the Bureau before the sale date that identified the time the Property was to be sold, she would have driven the check to the Bureau in advance of September 15, 2021. *Id.*

On January 27, 2022, the trial court granted the Petition to set aside the September 15, 2021 tax sale because the Bureau failed to give Mrs. Bosch notice in accordance with Section 602(e)(1) of the RETSL, 72 P.S. § 5680.602(e)(1). The trial court reasoned that the Bureau complied with Section 602(e)(1), but the return receipt sent to Mrs. Bosch was returned signed by Mr. Bosch. The return receipt bearing the wrong signature put the Bureau on notice that the Section 602(e)(2) warning had to be given to her. The Bureau, however, did not send Mrs. Bosch another notice of the tax sale at least ten days before the date of the sale. (Trial Ct. Op., 1/27/22, at 4.) Thus, in this instance the Bureau did not meet the statutory notice requirement.

As to whether Mrs. Bosch had actual, implied notice of the sale, the trial court found credible Mrs. Bosch's testimony that she had conversations with her husband about the delinquent taxes and that he was taking care of the taxes getting paid, however, "**no testimony was offered to show that [Mrs. Bosch] had been given notice of the date and time of the upset sale of her property**." *Id.* at 6 (emphasis

5

added). The trial court also addressed Keller's claim that Mrs. Bosch was bound by her judicial admissions in the Petition, in particular, her sworn averments in paragraphs 8 and 9:

> 8. **Petitioners** were told by representatives from the Bureau that $2,747.00 was due by September 15, 2021, to prevent the Property from being sold.
>
> 9. **[] Petitioners** were further told to pay $743.10 with equal payments of $248.00 until the entire amount of $2,474.00 was paid in full.

(R.R. at 4a) (emphasis added).

The trial court concluded that even though these averments refer to Mr. and Mrs. Bosch in the plural, they were not unequivocal admissions because they conflicted with Mrs. Bosch's unequivocal testimony at the hearing that she did not know the date and time of the sale and also with Paragraph 20 of the Petition, which stated:

> 20. Here, it is clear that **Mrs. Bosch did not receive the certified mail by the Bureau and did not personally know the Property was going to be sold at exactly 10:00 AM on September 15, 2021**.

(R.R. at 7a) (emphasis added). Keller appealed to this Court.[3]

The notice requirements of the RETSL relevant to this case are set forth in Section 602. 72 P.S. § 5860.602. Section 602(e)(2) of the RETSL "requires separate individual notice to each named owner of property." 72 P.S. § 5860.602(e)(2). Section 602 requires three different forms of notice to property owners prior to an upset tax sale: publication, posting, and mail. The notice must include:

---

[3] Our standard of review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence, or clearly erred as a matter of law. *Matter of Tax Sales*, 651 A.2d 1157 (Pa. Cmwlth. 1994).

6

(1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, [and] (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.

72 P.S. § 5860.602(a).

The notice must also notify the property owners that "the sale of any property may, at the option of the bureau, be stayed if the owner thereof or any lien creditor of the owner on or before the actual sale enters into an agreement with the bureau to pay the taxes in instalments, in the manner provided by this act." 72 P.S. § 5860.602(f). In accordance with Section 602(e)(2) of the RETSL, if a return receipt is not received from each owner, then at least ten days before the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by U.S. certified mail at his last known address. 72 P.S. § 5860.602(e)(2).[4]

In all tax sale cases, the tax claim bureau "has the burden of proving compliance with the statutory notice provisions." *Krawec v. Carbon County Tax Claim*

---

[4] Here, the receipt received by the Bureau for Mrs. Bosch bore the name of Mr. Bosch, and the Bureau made no other efforts to send her a second notice. In *Mangine Appeal*, 487 A.2d 45 (Pa. Cmwlth. 1985) and *Gill v. Tax Claim Bureau of Monroe County*, 616 A.2d 198 (Pa. Cmwlth. 1992), the tax bureau sent separate notices to both the husband and wife by certified mail, restricted delivery, return receipt requested. In each instance, the wife signed for her notice and also signed **her** name for her husband's notice. As such, the husband's receipt cards, returned to the tax bureau, bore the wife's signature. In both cases, we concluded that because the husband had not acknowledged receipt of the first notice, the bureau was required to send a second notice in accordance with the statute. Because the bureau failed to send the second notice after the first notice went unacknowledged, we determined that the bureau failed to comply with the RETSL. Here, as in *Mangine* and *Gill*, it is undisputed that the Bureau failed to comply with the statutory notice requirements of Section 602(e)(2) of the RETSL because it failed to send Mrs. Bosch a second notice after the first one went unacknowledged. *Cf.*, *In re Upset Tax Sale Held 11/10/97*, 784 A.2d 834 (Pa. Cmwlth. 2001) (holding statutory requirements were met where the receipt received by the bureau bore purported signature of husband to whom the notice was sent, even though wife had signed it for him). The narrow question in this appeal involves whether the trial court erred in concluding that Mrs. Bosch did not have actual or implied knowledge of the tax sale.

*Bureau*, 842 A.2d 520, 523 (Pa. Cmwlth. 2004). "If any of the three types of notice is defective, the tax sale is void." *Gladstone v. Federal National Mortgage Association*, 819 A.2d 171, 173 (Pa. Cmwlth. 2003).

Strict compliance with the notice requirements of Section 602 is not required when the Bureau proves that a property owner received actual notice of a pending tax sale. *Sabbeth v. Tax Claim Bureau of Fulton County*, 714 A.2d 514, 517 (Pa. Cmwlth. 1998). Actual notice in the tax sale context "encompasses both **express** notice and **implied** actual notice." *Id.* (emphasis in original). Actual notice must be "positively proven" and require no speculation about what conversations did or did not occur. *See In re Tax Claim Bureau of Lehigh County 1981 Upset Tax Sale Properties*, 507 A.2d 1294, 1296 (Pa. Cmwlth. 1986); *Casaday v. Clearfield County Tax Claim Bureau*, 627 A.2d 257, 259 (Pa. Cmwlth. 1993). Whether a taxpayer has actual notice of an upset tax sale of his or her property is a question of fact, the resolution of which will not be disturbed on appeal if supported by substantial evidence. *Aldhelm, Inc. v. Schuylkill County Tax Claim Bureau*, 879 A.2d 400, 407 (Pa. Cmwlth. 2005).

### Implied Actual Notice

Relying principally upon *Sabbeth*, Keller first argues that the trial court abused its discretion when it concluded that Mrs. Bosch did not have actual or implied actual notice of the tax sale. In *Sabbeth*, the Court noted that cases discussing what constituted "actual notice" were fact specific and did not state a definition of the term, and the Court relied on the definition that implied "actual notice" is "such notice as is positively proved to have been given to a party directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry." *Sabbeth*, 714 A.2d at 517 (quoting Black's Law Dictionary 1061-1062 (6th ed.1990)). In *Sabbeth*, we held that a property owner

had imputed knowledge of the sale because, after being sent appropriate notices, she left these notices unopened on her desk for nearly two months until the day of the sale. The record in that case showed that

> Sabbeth received notices for two years stating that the taxes assessed on the subject property were in arrears. Sabbeth worked directly across the street from the subject property on which notices were posted stating that the subject property was subject to tax sale. Most importantly, Sabbeth regularly went to her office to review the mail. It was in this office where a certified letter of notice from the [b]ureau remained upon her desk unattended for fifty-three days until its discovery the very day of the tax sale.

*Sabbeth*, 714 A.2d at 517. Based on that record evidence, we concluded that the property owner's claims that she was without actual notice of the tax sale were "nothing short of incredible." *Id.*

Keller argues that as in *Sabbeth*, the facts establish that Mrs. Bosch had actual implied notice of the time and date of the tax sale. He argues her testimony on cross-examination established that she first became aware of the pending sale in late August, which was at least three weeks before the date of the tax sale.

The issue of actual notice is "fact specific." *Sabbeth,* 714 A.2d at 517. As we recognized in *Sabbeth*, the appellate court must examine the "totality of the circumstances" to determine if the property owner had actual knowledge of the sale. *Id.* Questions of credibility, conflicts in the evidence and the weight to assign evidence are matters for the trier of fact to resolve and will not be disturbed on appeal. *Consolidated Return by McKean County Tax Claim Bureau of 9/12/2000*, 820 A.2d 900 (Pa. Cmwlth. 2003).

Here, the trial court concluded that Mrs. Bosch's testimony was credible and that she did not have notice of the date and time of the upset sale of the Property.

9

She testified that she did not receive or review the Bureau's notice of the tax sale. (R.R. at 88a.) She never had any conversations with any representatives from the Bureau. *Id.* at 89a. In her conversation with her husband about the delinquent taxes, she understood that he was taking care of getting the taxes paid. *Id.* at 91a-92a. Although she said she was aware in August of 2021 of a threatened tax sale, there was no evidence that Mrs. Bosch ever possessed the notice which stated that the Property was to be sold on September 15, 2022, at 10:00 a.m. The Bureau's notices must state the time and date of the sale. Although Mrs. Bosch was aware that there were taxes due, there was no evidence that she knew of the date or time of the upcoming tax sale. Mere notice of delinquent taxes does not constitute implied actual notice of a tax sale. *In re Dauphin County*, 834 A.2d 1229, 1234 (Pa. Cmwlth. 2003). As the trial court noted, Mrs. Bosch's testimony was unrebutted, and credible. (Trial Ct. Op. at 6.) This Court is bound by that factual finding. *See Sabbeth*, 714 A.2d at 516. Moreover, unlike the taxpayer in *Sabbeth*, Mrs. Bosch did not intentionally ignore an envelope from the Bureau. Finally, Mrs. Bosch credibly testified that she relied on her husband's assertions that the taxes were being paid and had she known that the sale was scheduled for 10:00 a.m., she would have driven the check to the Bureau in advance of September 15, 2021. (R.R. at 91a-92a.)

In sum, the factual circumstances surrounding the notice to Mrs. Bosch are not sufficient to overcome the trial court's credibility determination and conclusion that she did not have actual notice of the time and date of the sale. Accordingly, we conclude that the trial court did not err or abuse its discretion in concluding that the Bureau failed to meet its burden of proof to establish that Mrs. Bosch had "implied actual notice" of the time and date of the tax sale.

10

**Judicial Admissions**

Next, Keller argues that the trial court abused its discretion in concluding that averments in the Petition did not constitute judicial admissions that Mrs. Bosch had actual notice of the date and time of the tax sale because certain paragraphs refer to Mr. and Mrs. Bosch collectively as "Petitioners." He contends that the trial court should have held that these averments constituted judicial admissions and that Mr. and Mrs. Bosch waived any right to attack the validity of the tax sale based upon alleged statutory defects in the notice of sale received. He argues that judicial admissions control over testimony and a party cannot present contrary evidence to dispute a judicial admission. *Nasim v. Shamrock*, 563 A.2d 1266 (Pa. Super. 1989). He contends that the trial court erred by relying on Mrs. Bosch's testimony that was in conflict with her judicial admission. He claims Mrs. Bosch was bound by the averments in the Petition and, therefore, should not have been permitted to contradict her earlier admission.

A judicial admission is "an express waiver made in court or preparatory to trial by a party or his attorney, conceding for the purposes of trial, the truth of the admission," and may be contained in pleadings, stipulations, and other like documents. *Sherill v. Workmen's Compensation Appeal Board (School District of Philadelphia)*, 624 A.2d 240, 243 (Pa. Cmwlth. 1993). For an averment to qualify as a judicial admission, it must be a clear and unequivocal admission of fact. *John B. Conomos, Inc. v. Sun Company*, 831 A.2d 696, 713 (Pa. Super. 2003). The fact must have been unequivocally admitted and not be merely one interpretation of the statement that is purported to be a judicial admission. *Thomas v. County of Bucks Tax Claim Bureau*, 293 A.3d 1249 (Pa. Cmwlth. 2023). An admission is not conclusively binding when the statement is indeterminate, inconsistent, ambiguous or could be reasonably

construed to admit of more than one meaning. *Koziar v. Rayner*, 200 A.3d 513, 521 (Pa. Super. 2018). Additionally, it is improper to look at the averment at issue in a vacuum. *Branton v. Nicholas Meat, LLC*, 159 A.3d 540, 557 (Pa. Super. 2017). Instead, the pleading must be viewed as a whole, and the averment must be "viewed in the context of the remaining allegations and damages sought to be recouped." *Id.* (citation omitted).

In this case, although certain paragraphs of the Petition refer to Mr. and Mrs. Bosch as "Petitioners," Paragraph 20 of the Petition unambiguously states that Mrs. Bosch did not know of the tax sale. As the trial court recognized, a reading of Paragraph 20 with the earlier paragraphs revealed "conflicting statements of what [Mrs. Bosch] allegedly knew" and that reading them together did "not lead to an unequivocal admission." (Trial ct. op., at 9.) We discern no error in that assessment. The averments Keller relies on were not clear and unequivocal and capable of only one meaning due to the fact that they were inconsistent with other averments made in the Petition. Thus, we find that the averments of the Petition do not meet the well-established criteria of judicial admissions that precluded Mrs. Bosch's testimony at trial.

Based on the foregoing, the order of the trial court setting aside the tax sale is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Bosch and                          :
Rosemarie Bosch                           :
                                          :    No.  192 C.D. 2022
            v.                            :
                                          :
Tax Claim Bureau of Monroe                :
County and Jason Keller                   :
                                          :
Appeal of: Jason Keller                   :

## ***ORDER***


            AND NOW, this 16th day of November, 2023, the January 27, 2022
order of the Court of Common Pleas of Monroe County is hereby AFFIRMED.


                                    _____
                                    PATRICIA A. McCULLOUGH, Judge