**CONSOLIDATED RETURN BY McKEAN COUNTY TAX CLAIM BUREAU OF 9/12/2000.**

**Filed on behalf of John E. Howard and Bertha H. Howard.**

**Appeal of McKean County Tax Claim Bureau.**

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 2003.
Decided April 9, 2003.

Jay Paul Kahle, Bradford, for appellant.

Harold B. Fink, Port Allegany, for appellee.

Before COLINS, President Judge, LEAVITT, J., and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

The McKean Tax Claim Bureau (Bureau) appeals from an order of the Court of Common Pleas of McKean County (trial court), sustaining the objections of John and Bertha Howard (Howards) and setting aside the tax sale of real property owned by the Howards. We affirm the trial court.

The Howards are the record owners of 31.73 acres of open rural property (Property) located in McKean County, which the Bureau sold to the highest bidder at a judicial sale. The Howards filed exceptions to the sale, asserting, *inter alia*, that the notice of tax sale had not been posted on the Property ten days before the sale, as required by applicable statute.[1] At the hearing on the Howards' exceptions, it was established that notice was posted on a telephone pole on the Property. The Howards produced five witnesses who live nearby and visit the Property daily to testify that they did not see a notice on the telephone pole. The issue became, simply, whether the notice had been reasonably secured to the pole. The trial court found that the Bureau failed to meet its burden

of proof on this point and set aside the sale. The Bureau then appealed to this Court.

On appeal,[2] the Bureau argues that the trial court failed to apply the presumption of regularity to the evidence presented. It contends that had the trial court "done so, there would have been no basis for granting the [Howards'] exceptions, as [the Howards] presented no evidence to rebut the presumption that regularity existed with respect to the posting requirement." Bureau's Brief, p. 15. In response, the Howards assert the presumption does not relieve the Bureau of the burden to prove strict compliance with each requirement of the Law. We agree.

In a tax sale case, the taxing authority has the burden of proving compliance with the statutory notice provisions. *Casanta v. Clearfield County Tax Claim Bureau*, 62 Pa.Cmwlth. 216, 435 A.2d 681, 683 (1981). With regard to posting, Section 602 merely states that "[e]ach property scheduled for sale shall be posted at least ten (10) days prior to the sale." Section 602(e)(3) of the Law, 72 P.S. § 5860.602(e)(3). The Law does not prescribe a particular method of posting; however, the method chosen must be reasonable and likely to inform the taxpayer of an intended real property sale. *Lapp v. County of Chester*, 67 Pa.Cmwlth. 86, 445 A.2d 1356, 1358 (1982).[3]

---

1. Section 602 of the Real Estate Tax Sale Law (Law), Act of July 7, 1947, P.L. 1368, *as amended* 72 P.S. § 5860.602(e)(3). It states:

 (e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:

 * * *

 (3) Each property scheduled for sale shall be posted at least ten (10) days prior to the sale.

2. Our review is limited to determining whether the trial court abused its discretion, clearly

erred as a matter of law or rendered a decision unsupported by the evidence. *In re: 1999 Upset Sale of Real Estate*, 811 A.2d 85, 88 n. 1 (Pa.Cmwlth.2002). This standard is not affected by our Supreme Court's recent holding in *Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002).

3. In *Lapp*, this Court affirmed the decision of the trial court which had found that the presumption of regularity had not been rebutted. The Lapps, the owners, questioned whether the property was posted and, if it was, wheth-

In *Hughes v. Chaplin,* 389 Pa. 93, 95, 132 A.2d 200, 202 (1957), our Supreme Court established that there exists a presumption of regularity in the acts of public officers and noted that this presumption is "particularly suitable" in tax sales. However, in *Hughes,* the Supreme Court found that the person claiming the presumption actually overcame the presumption with her own evidence. Thus, it held that "[t]he owner could not be deprived of his land without strict compliance with the statute regulating the sales...." *Id.* at 96, 132 A.2d at 202.

In *Casanta,* we explained that the existence of the presumption does not relieve the bureau of the burden of proving compliance with the statutory notice provisions. In *Ali v. Montgomery County Tax Claim Bureau,* 124 Pa.Cmwlth. 557, 557 A.2d 35 (1989), appellant argued that the holdings of *Casanta* and *Hughes* could not be reconciled. We disagreed, reasoning that

> *Hughes* and *Casanta* are not in conflict. According to *Hughes,* a presumption of regularity exists *until the contrary appears.* By filing exceptions to a tax sale, averring that the statutory notice provi-

sions were not complied with a property owner creates a contrary appearance. *Ali,* 557 A.2d at 37[4] (emphasis in original).

Here, the Howards created a "contrary appearance" by filing exceptions, in which they averred that the property was not posted ten days prior to the tax sale. Accordingly, they overcame the presumption, and it became the Bureau's burden to prove that it complied with the statutory notice requirements. As was explained in *Hughes,* strict compliance is necessary because "to hold otherwise would permit a taking of one's land without due process of law...." *Hughes,* 389 Pa. at 96, 132 A.2d at 202.

We cannot find that the Bureau has met its burden of proving strict compliance with the statutory notice requirements. The Bureau's key witness, William Nannen (Nannen), was employed by the County of McKean to post tax sale notices. He testified about the posting at the Property as follows:

A. I used masking tape ...

\* \* \*

Q. Was it solidly affixed?
A. Yes.

---

er the method was reasonable. The deputy sheriff testified that he posted the Lapp premises with a Notice of Tax Sale on a date and time certain, with an independent recollection of posting the notice by attaching it with scotch tape to the glass sliding door at the business of the Lapps, the subject of the tax sale. In response, the Lapps offered only equivocal testimony. Accordingly, this Court affirmed the trial court's findings that the place where the notice was placed was conspicuous. This Court then turned its attention to the Lapp's alternative argument, whether the notice was "reasonably secured" to the door. In reviewing this issue, the Court opined that practical experience would dictate that using scotch tape on a glass door would be appropriate in most circumstances and affirmed the trial court on this issue.

The Lapps did not introduce any evidence to rebut the taxing authority evidence that the notice had been reasonably secured to the door of Lapps' business. Here, by contrast, the Howards presented testimony that even though visits were made to the Property daily, no one saw the notice on the utility pole in question.

4. *See also, Dolphin Service Corp. v. Montgomery County Tax Claim Bureau,* 125 Pa.Cmwlth. 220, 557 A.2d 38, 39 (1989) (wherein we stated that the filing of exceptions overcomes the presumption); *Michener v. Montgomery County Tax Claim Bureau,* 671 A.2d 285, 289 (Pa.Cmwlth.1996) (wherein this Court reiterated that *Casanta* was consistent with *Hughes* and declined the invitation to overrule *Casanta* and its progeny).

Reproduced Record 12a. On recross examination, however, Nannen testified,

Q. Would you mind telling us again how [you affixed the sign to the post]?

A. I used tape to put these signs up. I usually put tape on the upper corner and the bottom.

Q. ....I am not interested in what you usually do. Do you have—

A. Always do.

Q. Do you have any present recollection of what you used in this particular instance?

A. Yes, masking tape.

Q. Masking tape. Okay. Was it all the way around or just on the top, bottom, how?

A. Sometimes I put it on the corners and then one on the bottom so the wind doesn't blow it around. If the pole has got tar on it or something that it doesn't stick, I o[sic] all the way around it. *This one I don't remember what way. I do so many of these, I don't recollect which one is which.*

Supplemental Reproduced Record 14a—15a (emphasis added).

 The trial court granted the Howards' exceptions because the Bureau, simply, did not demonstrate strict compliance with the notice requirements of the Law. It reasoned as follows:

We have no reason to disbelieve Nannen's testimony that he posted the tax sale notice. His testimony established that he posted the tax sale notice on a telephone pole, which is admittedly on the Howards' land, and a photograph entered into evidence at the hearing (exhibit G) clearly establishes that the location of the posting was sufficiently conspicuous.

The issue is whether or not the notice was "reasonably secured" to the telephone pole. Nannen testified that he attached it with "ordinary masking tape." He had no recollection of how he attached it. Consequently we have no way of concluding whether or not it was "reasonably secured." There is no testimony, for example, whether he secured the notice by winding the tape around the pole, or whether he only taped the corners of the notice to the pole, or only the top and bottom of the notice. Obviously, how it was affixed to the pole determines whether it was reasonably secured. If we do not how it was taped to the pole, we cannot conclude whether it was reasonably secured.

Trial Court Opinion, 6. Questions of credibility, conflicts in the evidence and the weight to assign evidence are matters for the trier of fact to resolve and will not be disturbed on appeal. *Moody v. Philadelphia Housing Authority,* 673 A.2d 14, 18 (Pa.Cmwlth.1996). The trial court's conclusion that the Bureau failed to meet its burden is fully consonant with the evidence or, more properly, the lack thereof.

Accordingly, the decision and order of the trial court is affirmed.

### ORDER

AND NOW, this 9th day of April, 2003, the order of the Court of Common Pleas of McKean County, dated June 19, 2001, in the above-captioned matter is hereby affirmed.