**Ronald CRUDER, Appellant**

v.

**WESTMORELAND COUNTY TAX CLAIM BUREAU and E.L. and Property.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 4, 2004.

Decided Nov. 10, 2004.

---

Thomas E. Pandaleon, Pittsburgh, for appellant.

David F. Dieteman, Erie, for appellee.

Valerie M. Schwab, Uniontown, for appellee, E.L. and Property.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Ronald Cruder (Cruder) appeals from an order of the Court of Common Pleas of Westmoreland County (trial court) denying his motion for post-trial relief. On July 21, 2003, the trial court dismissed Cruder's exceptions to the sale of his property

through a tax upset sale, concluding that they lacked merit because Cruder had actual notice of the tax sale. Thereafter, Cruder moved unsuccessfully for post-trial relief. We affirm.

Cruder was the record owner [1] of property located in Hempfield Township, Westmoreland County, that was sold at a tax upset sale because of delinquent property taxes. At the time of the sale, Cruder was the owner of two businesses that were operated on the subject property. In addition, Cruder's mother lived in a home located on the property. At the annual tax upset sale on September 9, 2002, the Westmoreland County Tax Claim Bureau (Bureau) sold the property for delinquent taxes to "E.L. and Property," which paid $10,122.22 to the Bureau.

Cruder's property was first exposed to an upset sale in July 2001 for a tax delinquency dating back to the previous year. The Bureau sent the notice of this sale to Cruder at his place of business on the property, where he received it on May 8, 2001. However, the property did not sell because Cruder entered into an Agreement to Stay Sale (Agreement) with the Bureau on September 7, 2001, to resolve the delinquent taxes. The Agreement required Cruder to make regular payments to the Bureau and provided that if he defaulted on the Agreement the property would be exposed for tax sale.[2] Cruder defaulted. He made no payments between January 22, 2002, and May 14, 2002. As a result of the default Cruder could not enter into a new or modified Agreement to Stay Sale.[3] Thus, Cruder's default required the Bureau to expose the property for tax sale at the next available upset sale.

On May 2, 2002, a notice of the upset sale was sent to Cruder [4] by certified mail to his business address advising him that the sale of his property was scheduled for September 9, 2002. Reproduced Record at 6a–7a (R.R. ——). On May 10, 2002, William Pritchard (Pritchard), controller for the two businesses located on the property, signed the certified mail receipt for this notice. Pritchard testified that it was office procedure to sort incoming mail ac-

---

1. Cruder and Intervenor Joylee Marciniak, who are brother and sister, entered into an installment land contract to purchase the property. At the time of the upset tax sale, Cruder, along with the sellers on the installment land contract, Sherry McKelvey and Louis Ziff, were the record owners of the property; title to the property had not yet been transferred to Cruder and Marciniak. Marciniak successfully petitioned the trial court to intervene and does not contest the propriety of the tax sale.

2. The Agreement listed the delinquent tax claim as $8,808.99. Reproduced Record at 206a (R.R. ——). Cruder agreed to make payment of all sums due in order to stay the sale of the property. The Agreement provided a monthly payment plan, listing the specific amounts due. Following the requirements in Section 603 of the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5860.603, the Agreement provided:

[I]n the case of default by [Cruder] in complying with the terms of payments, the Tax Claim Bureau may, after written notice of such default given by United States mail, postage prepaid, to [Cruder] at the address stated herein, proceed with the sale of said property as provided by the [Real Estate Tax Sale Law] in such case.

*Id.*

3. The Agreement provided

IF A PARTY TO AN INSTALLMENT AGREEMENT DEFAULTS ON THE AGREEMENT, THE BUREAU SHALL NOT ENTER INTO A NEW INSTALLMENT AGREEMENT WITH THAT PERSON WITHIN THREE (3) YEARS OF THE DEFAULT.

R.R. 206a. *See also* Section 603 of the Real Estate Tax Sale Law, 72 P.S. § 5860.603.

4. The notice was also addressed to Sherry McKelvey and Louis Ziff, also record owners of the property.

cording to whom it was addressed. Cruder testified that he never received the Bureau's mailing and that Pritchard did not inform him of the mailing. Four calendar days after Pritchard signed the notice, the Bureau received a payment from Cruder in the amount of $1,801.83, roughly three times the monthly amount due under the Agreement.[5]

On July 2, 2002, Cruder's property was posted with a notice of sale.[6] In addition, the sale was advertised in the Westmoreland Law Journal and the local newspapers.[7] Thereafter, the property was sold at the tax upset sale on September 9, 2002.

On October 30, 2002, Cruder filed objections to the tax sale in which he claimed that the Bureau failed to comply with the notice requirements of the Real Estate Tax Sale Law with respect to the sale of his property on September 9, 2002. A hearing was held at which the Bureau presented evidence to establish its compliance with the statutory notice provisions. The trial court found that the property had been posted in accordance with the statute but that the certified mail notice sent by the Bureau was defective. Specifically, the trial court denounced as "inexcusable" the Bureau's failure to verify whether the notice sent by certified mail was actually delivered to the taxpayer. Nevertheless, the trial court concluded that because Cruder had actual notice of the sale, the defect was waived; thus, the trial court refused to set aside the sale.

Cruder filed a motion for post-trial relief asserting, *inter alia*, that the trial court erred in finding Cruder had actual notice of the sale prior to September 9, 2002.[8] The trial court denied the motion, reasoning that Cruder's payment of over $1800 to the Bureau, after three months of delinquency and just four days after Pritchard signed for the notice of sale, was more than mere coincidence and supported the inference that Cruder had actual notice of the pending tax sale. The trial court concluded that Cruder's actual notice of the sale cured any defect in the certified mail notice.[9]

On appeal,[10] Cruder contends that the trial court erred in concluding that the

**5.** Cruder testified that the ability to make such a large payment was happenstance and the result of money coming into his business in lump sums. He also indicated that he fully understood that he had to make payments or the county would sell the property. Cruder admitted that he had not made all the scheduled payments.

**6.** Deputy Sheriff Ludwig Sharek testified that in order to determine the correct location for posting, he cross-referenced the property using maps provided by the tax office. Cruder, six of his employees, and his mother who was living on the property at the time of the posting, all testified that they did not see the posting of the tax sale on the property.

**7.** At the hearing, the parties stipulated that the sale was properly advertised.

**8.** Specifically, Cruder requested the trial court (1) to vacate its July 21, 2003 order; (2) to reopen the record; (3) to set aside its finding that Cruder had actual notice; and (4) to sustain his exceptions.

In addition to challenging the trial court's finding on notice, Cruder asserted that the trial court erred in overruling his hearsay objections to the testimony of Mr. Lesley May, who stated that Cruder had prior awareness of the tax sale; that the trial court erred in closing the testimony at the nonsuit stage of the proceedings; and that the trial court erred in inferring that Cruder had actual knowledge of the tax sale notice that was signed for by Pritchard on May 10, 2002.

**9.** In its opinion, the trial court agreed with Cruder that the testimony of Mr. May was inadmissible. However, this did not change the outcome.

**10.** Our scope of review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence or clearly

Bureau complied with the notice requirements of the Real Estate Tax Sale Law.[11] Specifically, Cruder argues that the trial court erred in finding that Cruder had actual notice of the sale. Cruder argues that the fact that he made a substantial tax payment four days after Pritchard signed the receipt for the notice does not show that he had actual notice. Further, Cruder contends that the trial court erred in finding that the posting of the tax sale by the sheriff's office satisfied the statutory notice requirements.

■ The primary purpose of the Real Estate Tax Sale Law is to ensure the collection of taxes, not to deprive citizens of their property rights. *Stanford–Gale v. Tax Claim Bureau of Susquehanna County*, 816 A.2d 1214, 1216 (Pa.Cmwlth.2003). Indeed, the Pennsylvania and United States Constitutions require, *inter alia*, adequate notice to property owners prior to the execution of a tax sale. *Id.* A failure by a tax claim bureau to comply with all the statutory notice requirements ordinari-

ly nullifies a sale. However, we have waived strict compliance with the statutory requirements where it is demonstrated that the record owner has received actual notice of the impending sale. *Sabbeth v. Tax Claim Bureau of Fulton County*, 714 A.2d 514, 517 (Pa.Cmwlth.1998). Further, actual notice encompasses both express and implied actual notice. *See id.*, 714 A.2d at 517.

■ With these principles in mind, we consider, first, whether the trial court erred in concluding that Cruder had actual notice of the sale. Pritchard, the controller of Cruder's company, signed the certified mail receipt for the notice of the property's tax sale. Cruder made a payment of $1,801.83, which constituted three months of overdue payments, four calendar days, or two business days, after Pritchard signed for the notice. The trial court found that this evidence showed that Cruder had, in fact, received actual notice of the tax sale. Cruder testified that he received a lump sum of money at the time enabling him to write such a check, but the

---

erred as a matter of law. *In re Dauphin County Tax Claim Bureau*, 834 A.2d 1229, 1232 n. 2 (Pa.Cmwlth.2003).

**11.** Section 602 of the Real Estate Tax Sale Law provides in pertinent part:

(a) At least thirty (30) days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.

. . .

(e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:

(1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.

(2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

(3) Each property scheduled for sale shall be posted at least ten (10) days prior to the sale.

§ 72 P.S. 5860.602.

trial court rejected his testimony as not credible because it was not corroborated.[12] The trial court found that circumstantial evidence supported the finding that Cruder received notice of the impending sale.[13]

Our holding in *Sabbeth*, where we considered when actual notice may be established by implication, is controlling here. In *Sabbeth*, the record owner testified that she did not actually personally receive or open the notice that had been sent by certified mail to her at her place of business until 53 days after the sale. Another employee, not Sabbeth, signed for the certified mailing, which was placed on Sabbeth's desk. This Court determined that Sabbeth had implied actual notice of the sale and, therefore, had a duty to undertake further inquiry. We further found that Sabbeth was well aware of the jeopardy to her property caused by her failure to pay taxes. Indeed, Sabbeth had received two years of notices that her taxes were in arrears. Since she worked across the street from the subject property, Sabbeth should have seen the notice posted on her property. Looking at the totality of these circumstances, this Court held that implied notice is encompassed in the concept of actual notice. Refusing to reward Sabbeth's effort to avoid the consequences of the notice, we held that strict compliance with the notice requirements had been waived.

In the present case, the evidence supports the trial court's conclusion that Cruder, like Sabbeth, had implied actual notice of the impending sale of his property. Cruder was well aware of his tax delinquency and, thus, sought to resolve the arrearage by the Agreement. Cruder testified that he knew that a failure to pay in accordance with the Agreement would cause the Bureau to expose the property for a tax sale. In addition, Cruder worked on the subject property itself, remaining in his office there for three to five hours a day, and should have seen the posted notice. Under the *Sabbeth* analysis, Cruder had actual notice, rendering strict compliance with the statutory notice requirements waived. It was not necessary for the Bureau to prove that Cruder signed for the certified mail receipt in order for it to prove actual notice to Cruder.

■■ Next, we consider Cruder's challenge to the effectiveness of the posting of the property by the sheriff. Section 602(e)(3) of the Real Estate Tax Law states that "[e]ach property scheduled for sale shall be posted at least ten (10) days prior to the sale." 72 P.S. § 5860.602(e)(3). The statute does not prescribe a particular method of posting; however, the method chosen must be reasonable and likely to inform the public and the taxpayer of an intended real property sale. *Consolidated Return by McKean County Tax Claim Bureau of 9/12/2000*, 820 A.2d 900, 901 (Pa.Cmwlth.2003).

Cruder argues that the posting procedure used by the deputy sheriff in this case "seem[ed] almost calculated not to inform the property owner." Appellant's Brief at 17. Specifically, he contends that the deputy sheriff's imprecise measurement of distance from one lot to another as well as the deputy sheriff's decision not to post near a driveway to the business located on the property rendered the Bureau's posting a nullity.

---

12. At the hearing, the trial court indicated that Cruder's attempt to explain this sudden payment fell short. The trial court expected evidence of a lack of funds in former months and of a turnaround in the amount of deposits after May that would show the possibility of making a large payment to the Bureau.

13. At the hearing, the trial court stated, "[S]ometimes circumstantial evidence speaks louder than direct evidence, and this is one of those times." R.R. 174a.

In *Consolidated Return*, this Court considered whether a notice had been reasonably secured to a telephone pole on the property and, thus, the property lawfully posted. In that case, the county employee posting tax notices had no recollection of how he attached that particular notice. The trial court pointed out that it had no reason to disbelieve the county employee's testimony, but, as a result of the witness' imprecise memory, the trial court lacked a basis for concluding that the notice had been reasonably secured. *Id.*, 820 A.2d at 903. Further, the record owners produced five witnesses who lived near the property in question, visited it daily and never saw a posting.

By contrast, in the present case, the deputy sheriff who posted the notice testified with total recall on the posting of Cruder's property. He testified about the specific procedure used to identify and post the property, explaining as follows:

Q. In this particular instance, do you have a recollection as to how you would find this particular map number in order to post it?

A. Well, the notice of the map number is on the Tax Claim Bureau notice, and you cross reference with the maps that are provided to us by the tax office.

Q. Do you—do you specifically recall posting this property?

A. Yes.

Q. And what was the date that you posted it?

A. July 2, 2002.

Q. At approximately what time?

A. 4:14 p.m.

Q. And where—how did you post it? Like, put it on a building, put it in the ground?

A. I put it in the ground. This would be—I guess Toll Gate Hill is the name of the road, or it's Old Route 30. And I cross referenced the property. There was a street address across the street from—I think it's Odin Drive. And I used that as a physical reference and I worked my way back down towards the property and I posted the property.

Q. When you say posted "on the ground," how do you do that?

A. Pound a stake in the ground and put the notice on the stake.

Q. How is it affixed?

A. Staple gun.

R.R. 13a–14a. Further, the deputy sheriff recalled the specific nature of the property as a wooded area with weeds cut down along the highway. The deputy sheriff also detailed the procedure he used in which to measure the distance from one lot to another using his odometer. Quite simply, this case is easily distinguishable from *Consolidated Return*. Here, the trial court had the evidence needed to support the finding that the posting of the property had been accomplished.

Cruder argues, nevertheless, that the posting was flawed because the deputy sheriff did not post the building on the property where Cruder worked or where his mother lived. This argument fails because Section 602 of the Real Estate Tax Sale Law states simply that the *property* shall be posted; there is no requirement in Section 602 for posting a particular building.[14] The posting procedure employed by the deputy sheriff was reasonable and likely to inform the public and Cruder of the impending sale. It is not necessary that the Bureau choose the method most appro-

14. When questioned why he did not go to the business on the property and post the build-

ing, the deputy sheriff responded, "We're not

priate for Cruder; after all, the purpose of the posting is to inform the public. *In re Upset Price Tax Sale of September 10, 1990*, 147 Pa.Cmwlth. 52, 606 A.2d 1255, 1258 (1992). The posting in this case satisfied Section 602(e)(3) of the Tax Sale Law.

In sum, because the Bureau proved compliance with all the statutory mandates by showing actual notice on the part of Cruder and by properly posting the subject property, the Court cannot find that the trial court erred in denying Cruder's motion for post-trial relief. Accordingly, the Court affirms the trial court's order.

### ORDER

AND NOW, this 10th day of November, 2004, the order of the Court of Common Pleas of Westmoreland County dated November 4, 2003, in the above-captioned matter is affirmed.

---

instructed to post the buildings. We're instructed to post the property." R.R. 16a.