**Brandon WILES, Appellant**

v.

**WASHINGTON COUNTY TAX CLAIM BUREAU**

v.

**William Vanzin.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 12, 2008.

Decided Feb. 23, 2009.

---

Lane M. Turturice, Washington, for appellant.

Blane A. Black, Monongahela, for appellee, Washington County Tax Claim Bureau.

Thomas A. Lonich, Washington, for appellee, William Vanzin.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McGINLEY.

Brandon Wiles (Wiles) appeals from an order of the Court of Common Pleas of Washington County (trial court) that denied Wiles' petition to set aside the upset sale at 162 Francis Mine State Road, Burgettstown, Pa. 15021 (Property) and affirmed the sale of the Property to William Vanzin (Vanzin).

On October 29, 2007, Wiles petitioned to set aside the upset sale of the Property and alleged:

. . . .

4. On or about September 13, 2007, the Washington County Tax Claim Bureau exposed parcel 570–016–02–03–0003–00 [Property] for sale at the 2007 Upset Tax Sale.

5. The "owner" of the aforesaid parcel [Property] is Brandon Wiles. . . .

. . . .

6. Brandon Wiles is the record owner of the aforesaid property pursuant to a Deed recorded in the Washington County Recorder of Deeds Office. . . .

. . . .

8. The owner [Wiles] of the aforesaid property was not properly notified of the impending Upset Tax Sale, in accordance with 72 P.S. § 5860.602 of the Pennsylvania Real Estate Tax Sale Law.

9. The property was not properly posted prior to the sale in accordance with

72 P.S. § 5860.602 of the Pennsylvania Real Estate Tax Sale Law.

10. Respondent's [Washington County Tax Claim Bureau] failure to adhere to the formal notice mandates pursuant to the Pennsylvania Real Estate Tax Law constitutes a grievous error and is sufficient grounds to set aside the Upset Tax Sale of the aforesaid parcel [Property].

11. The Upset Tax Sale of the aforesaid property is a deprivation of the owner's [Wiles'] property without due process of law-in violation of the Constitution of the Commonwealth of Pennsylvania and the Constitution of the United States of America.

12. Based upon the foregoing, the Upset Tax Sale of the aforesaid property should be set aside and the bid price be refunded to the bidder, William Vanzin.

Petition to Set Aside Upset Tax Sale, October 29, 2007, Paragraphs 4–6 and 8–12 at 1–2; Certified Record (C.R.) at 16.

On May 13, 2008, Vanzin petitioned to intervene and alleged:

. . . .

2. Brandon Wiles alleges that he was the owner of the real property in question and that said Sale did not meet statutory requirements.

3. William Vanzin was the successful bidder, and therefore purchaser, of the real property in question.

4. As the successful bidder and purchaser, Vanzin has a real, legitimate and legal interest in the litigation.

5. Vanzin requests relief to intervene to protect said interest.

Petition to Intervene, May 13, 2008, Paragraphs 2–5 at 1; C.R. at 42. On April 23, 2008, the trial court granted the petition. C.R. at 42.

At a hearing, Yvonne Orsatti (Orsatti), finance and operation manager, testified for the Washington County Tax Claim Bureau (Tax Claim Bureau). Initially, the Tax Claim Bureau "[o]n February 24 of '06 [sent] a courtesy letter stating that the taxes were liened into the Bureau, the 2005 taxes were sent First Class Mail [to the Property]." Hearing Transcript (H.T.), April 23, 2008, at 6; Reproduced Record (R.R.) at 6.[1] The letter was not returned. On April 26, 2006, the Tax Claim Bureau sent a "notice of return and claim . . . for the 2005 tax" to the Property. H.T. at 6; R.R. at 6. "The green receipt was signed on May 3 of '06 by Brandon Wiles and returned to the Bureau." H.T. at 7; R.R. at 7. The Tax Claim Bureau sent "a courtesy letter, we call it the presale notice . . . on June 1 of '07' to the Property." H.T. at 7; R.R. at 7. On July 18, 2007, the Tax Claim Bureau sent an official 2007 upset notice to the Property, and "the postal service attempted to deliver and the notice itself was returned unclaimed. They attempted delivery on August 2, August 7, and August 17." H.T. at 8; R.R. at 8.

Next, an assessor for the Tax Claim Bureau "posted" the Property on August 7, 2007, at 11:05 a.m. H.T. at 8; R.R. at 8. The Property then was "advertised in the Legal Journal, Observer–Reporter and Valley Independent on August 9, '07." H.T. at 9; R.R. at 9. On August 30, 2007, "[f]irst class notice with proof of mailing was mailed to the owner at 162 Francis Mine State Road, Burgettstown, Pennsylvania 15021 [Property], and there is no record of that mail being returned to the Bureau." H.T. at 9; R.R. at 9. The upset sale occurred on September 13, 2007, and a post-sale notice was sent to the Property on September 19, 2007. H.T. at 10; R.R.

1. The numbering of the H.T. pages is identical to R.R. pages of the hearing.

at 10. The notice was "returned unsigned and unclaimed." H.T. at 11; R.R. at 11.

Steven Wright (Wright), an assessor for the Tax Claim Bureau, testified that on August 7, 2007, at approximately 11:05 a.m. he posted the Property and photographed the sign and Property as directed by the Tax Claim Bureau. H.T. at 31; R.R. at 13. Wright stated that "I am familiar with the property that's in the picture behind it ... I am familiar with Francis Mine Road because I am out there often for the assessment office." H.T. at 13; R.R. at 31. Finally, Wright stated that the "[p]osted property should be posted for the public to see ... [t]hat's why the stick—we have a stick to staple twice, securely staple it and make sure it is securely hammered in the ground." H.T. at 36; R.R. at 36.

Vanzin, the purchaser, testified that "[t]he men that worked for me called me up and told me he had seen a posting notice that the property was open for taxes." H.T. at 44–45; R.R. at 44–45. Vanzin stated that "[t]he posting was there for quite a while and then the whole thing was gone, the stick and everything was gone." H.T. at 46; R.R. at 46. Vanzin became aware of the tax sale of the Property because of the posting notice and that the sign was located about seven to eight feet from the road. H.T. at 47; R.R. at 47.

Wiles testified he never received the Tax Claim Bureau's notices that the Property was to be sold for delinquent taxes. H.T. at 54; R.R. at 54. Wiles first became aware of the sale of the Property around October 1, 2007, when he received a letter from the Tax Claim Bureau. H.T. at 55; R.R. at 55. "I called immediately when I got the letter ... I went to the post office to see when it was sent ... I went [to] the tax claim office and talked to several peo-

ple ... but apparently ... it was too late." H.T. at 56; R.R. at 56. Wiles stated that he saw the stick without a printed notice lying on the Property, "I didn't know what it was, it was a black stick." H.T. at 60; R.R. at 60.

The trial court made the following pertinent findings of fact:

1. The Tax Claim Bureau mailed to owner [Wiles] by certified/restricted mail on July 18, 2007, the 2007 Upset Notice. Attempted delivery on the Notice was made on August 2, 6 and 17, 2007, however the Notice was returned unclaimed.

2. On August 7, 2007, the Tax Upset Sale Notice was posted at the subject property by Certified Assessor Steven Wright.

3. On August 9, 2007, the Tax Upset Sale Notice was properly advertised in the Washington County Legal Journal, Observer–Reporter and The Valley Independent.

4. The Notice of the Tax Upset Sale was mailed via first Class Mail with proof of mailing to property owner [Wiles] on August 30, 2007. Said mailing was not returned to the Tax Claim Bureau by the U.S. Postal Service.

5. The actual sale of the subject property occurred on September 13, 2007, to William Vanzin.

Trial Court Opinion, May 14, 2008, Findings of Fact (F.F.) Nos. 1–5 at 1–2. The trial court denied the petition to set aside upset tax sale and affirmed the sale of the Property to Vanzin.

## I. Whether The Posting Of The Notice Of Sale On The Property Was Insufficient?

Initially, Wiles contends[2] that the posting was improper because it consisted

---

2. This Court's review in tax sale cases is limit-   ed to a determination of whether the trial

"of one half of an '8.5 × 11' piece of paper attached to a 2 inch wide piece of wood lath with two staples."[3] *See* Appellant's Brief at 17. Wiles asserts that the posting was insufficient to notify the general public of the impending sale of the Property.

Section 602(e)(3) **(Notice of Sale)** of "Real Estate Tax Sale Law"[4] (RETSL), 72 P.S. § 5860.602(e)(3), provides that "[i]n addition to show publications, similar notice of the sale shall also be given by the bureau as follows ... [e]ach property scheduled for sale shall be posted at least ten (10) days prior to the sale."

▮ While the RETSL is silent as to the manner of posting required, this Court has interpreted Section 602(e)(3) to mean that the method of posting must be reasonable and likely to inform the taxpayer as well as the public at large of an intended real property sale. *In re Tax Sale of 2003 Upset*, 860 A.2d 1184, 1188 (Pa.Cmwlth. 2004). Case law requires that the posting be reasonable, meaning conspicuous to the owner and public and securely attached. *Thomas v. Montgomery County Tax Claim Bureau*, 123 Pa.Cmwlth. 371, 553 A.2d 1044 (Pa.Cmwlth.1989). "Conspicuous" means posting such that it will be seen by the property owner and public generally. *In re Sale of Real Estate by Montgomery Tax Claim Bureau*, 836 A.2d 1037 (Pa.Cmwlth.2003).

In particular, this Court has taken a practical and commonsense approach to determine whether a posting was reasonable. Each case depends on the nature and location of the property and, of course, the placement of the Notice. For example, in *Lapp v. Chester County*, 67 Pa.

Cmwlth. 86, 445 A.2d 1356 (1982), this Court held that posting of the notice on a glass door of the dwelling which faced the road sufficiently complied with the posting requirements of this section. However, posting a notice on a door which faced the side yard, as opposed to the road, did not satisfy the statutory requirement. *Ban v. Tax Claim Bureau of Washington County*, 698 A.2d 1386 (Pa.Cmwlth.1997). Finally, in *O'Brien v. Lackawanna County Tax Claim Bureau*, 889 A.2d 127 (Pa.Cmwlth. 2005), a notice that was printed on a standard letter sized paper *but which was folded into thirds and wrapped around a small tree branch and placed on the side of the house did not satisfy the reasonable notice standard.*

Here the evidence established: 1) that the Property was a vacant lot; 2) that the Property was located between Wiles' residence and Vanzin's residence; 3) that the posting notice was stapled twice, at the top and at the bottom, to a stick and hammered securely into the ground on the Property; 4) that the posting notice was conspicuously placed on the property and was "parallel to the row of houses" and faced the road; 5) that Wright photographed the posting notice as required by the Tax Claim Bureau; 6) that Vanzin, the purchaser of the Property, first became aware of the upcoming upset tax sale when he saw the posting notice on the Property; and 7) that "the posting was there for quite a while and then the whole thing was gone, the stick and everything was gone." H.T. at 46; R.R. at 46. Given the circumstances, this Court concludes the posting notice was conspicuous and that the post-

---

court abused its discretion, erred as a matter of law or rendered a decision with lack of supporting evidence. *Michener v. Montgomery County Tax Claim Bureau*, 671 A.2d 285 (Pa.Cmwlth.1996).

3. This Court has foregone the sequence of Wiles' arguments.

4. Act of July 7, 1947, P.L. 1368, *as amended.*

ing was reasonable and was reviewable from the public road.

## II. Whether The Tax Claim Bureau Was Required To Exercise Additional Notice Efforts Under Section 607.1 Of The (RETSL), 72 P.S. § 5860.607a?

██ Wiles contends that if the Tax Claim Bureau had exercised additional notice efforts required under Section 607.1 of the RETSL[5] it would have discovered his residential address, not the Property address, and if the notices were mailed to his residence he would have received the notices that the Property was subject to the upset tax sale.

Section 607.1 (**Additional notification efforts**) of the RETSL, 72 P.S. § 5860.607a, provides:

When any notification of a pending tax sale ... is required to be mailed to any owner ... *and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification* by the named addressee or is not returned or acknowledged at all, then before the tax sale can be conducted or confirmed, *the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him. The bureau's efforts shall include,* but not necessarily be restricted to, *a search of current telephone directories for the county and of the dockets and indices of the county assessment offices, recorder of deeds office and the prothonotary's office,* as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property.... (emphasis added).

*In re Tax Sale of Real Property Situated in Jefferson Tp., Somerset County,* 828 A.2d 475 (Pa.Cmwlth.2003), this Court addressed whether the Somerset Tax Claim Bureau was required to exhaust all "efforts" listed in Section 607.1 of the RETSL, 72 P.S. § 5860.607a, in addition to mailing, posting, and publication notices under Section 602 of the RETSL, 72 P.S. § 5860.602a:

The trial court rejected [M. Susan] Ruffner's contentions that the Bureau failed to take additional reasonable efforts as required by Section 607.1 of the Law [RETSL] to locate her whereabouts upon not receiving any signed receipt confirming the delivery of the notices sent to her by the Bureau.... *The trial court found that the record established that: (1) proper notice was sent to Ruffner by the Bureau by certified mail, return receipt requested but Ruffner chose not to claim the mail from the postal authorities; (2) proper first class mail notice was forwarded to Ruffner at her proper mailing address and was not returned to the Bureau; and (3) adequate efforts were made by the Bureau to determine whether there was any other address at which Ruffner could have been served. While the trial court acknowledged that the Bureau did not search the other sources specified in Section 607.1 of the Law [RETSL], the trial court found that it was apparent that any additional effort by the Bureau would have been futile and pointless because proper notices were sent to the proper address.*

The requirement of due process ... requir[es] the taxing bureau to conduct a reasonable investigation to ascertain the identity and whereabouts of the latest owners of record of property subject to

---

5. Section 607.1 of the RETSL was added by the Act of July 3, 1986, P.L. 35.

an upset sale for the purposes of providing notice to that party. A taxing bureau's duty to investigate such matters is confined to determining the owners of record and then to use ordinary common sense business practices to ascertain proper addresses where notice of the tax sale maybe given. . . . *Where notice is obviously not effectively reaching the owners of the record, the taxing bureau must go beyond the mere ceremonial act of notice by certified mail. . . . However, due process does not require the taxing bureau to perform the equivalent of a title search or to make decisions to quiet title. . . .*

. . . .

*As stated by the trial court, while the Bureau did not check the county's recorder of deeds and prothonotary offices, nothing in the record suggests that such a search would have revealed anything other than the address to which the notices were mailed.* (emphasis added).

*Id.* at 477–80.

Here, the Tax Claim Bureau initially sent a courtesy letter on February 24, 2006, concerning the 2005 taxes by first class mail to the Property. H.T. at 6; R.R. at 6. The U.S. Postal Service did not return the mailing. H.T. at 6; R.R. at 6. Second, on April 26, 2006, the Tax Claim Bureau sent a delinquent notice concerning the 2005 taxes to the Property by certified mail, return receipt requested. H.T. at 6; R.R. at 6. On May 3, 2006, the green receipt was returned to the Tax Claim Bureau signed by Wiles. H.T. at 7; R.R. at 7. Third, on June 1, 2007, the Tax Claim Bureau sent a courtesy letter concerning the notice by first class mail to the Property. H.T. at 7; R.R. at 7. The U.S. Postal Service did not return the mailing. H.T. at 7; R.R. at 7. Fourth, on July 18, 2007, the Tax Claim Bureau sent an official upset sale notice to the Property by certified mail, return receipt requested. H.T. at 7; R.R. at 7. The certified mail was returned "unclaimed" after attempted delivery on August 2, August 7, and August 17, 2007. N.T. at 8; R.R. at 8. Fifth, on August 7, 2007, the Tax Claim Bureau sent an assessor to the Property to place a posting notice on the Property. H.T. 8–9; R.R. at 8–9. Sixth, on August 9, 2007, the Tax Claim Bureau published notice of the pending sale of the Property in the Legal Journal, Observer–Reporter, and the Valley Independent. Seventh, on August 30, 2007, the Tax Claim Bureau sent another notice of the pending upset sale to the Property by first class mail. H.T. at 9; R.R. at 9. The U.S. Postal Service did not return the mailing. H.T. at 9; R.R. at 9. Eighth, on September 19, 2007, the Tax Claim Bureau sent a post sale notice to the Property by certified mail, return receipt requested. H.T. at 10; R.R. at 10. The certified mail was returned unsigned and "unclaimed." H.T. at 11; R.R. at 11. Ninth, although after the upset tax sale was completed, the Tax Claim Bureau checked with the Recorder of Deeds and found that the Property was the correct address. H.T. at 12 and 21–23; R.R. at 12 and 21–23.

In the present controversy, the Tax Claim Bureau did not conduct a search of current telephone directories, dockets and indices of the Office of the Prothonotary, and previous contacts made to a different address or telephone number contained in the property file as enumerated under Section 607.1 of the RETSL, 72 P.S. § 5860.607a. The Tax Claim Bureau did conduct a search of the dockets and indices of the recorder of deeds although this occurred subsequent to the upset tax sale.

However, the trial court concluded that the Tax Claim Bureau complied with all of notice requirements, i.e. mailing, posting,

and publication notices under Section 602(a), (e)(1)(2) of the RETSL, 72 P.S. § 5860.602(a), (e)(1)(2). Critical to the trial court's decision to affirm the sale of the Property to Vanzin was the fact that the Property was a vacant lot located between Wiles' residence and Vanzin's residence. In fact, Vanzin testified that he became aware of the pending upset sale when he saw the posting notice on the Property. To the contrary, Wiles testified that he never saw the posting notice but only discovered a stick lying on the Property. The trial court found Vanzin to be more credible than Wiles. *See* Trial Court Opinion, F.F. No. 2 at 1. "The trial court is always free to independently assess the credibility of witnesses and to accept or reject the testimony presented." *Aletto v. Aletto*, 371 Pa.Super. 230, 537 A.2d 1383, 1388 n. 8 (1988).

Accordingly, this Court is constrained to affirm the decision of the trial court.[6]

### ORDER

AND NOW, this 23rd day of February, 2009, the order of the Court of Common

6. Wiles also argues that the Tax Claim Bureau conducted the upset tax sale in violation of Section 102 of the RETSL, 72 P.S. § 5860.102, which provides that "payment of the full amount of money agreed to be paid as the sale price by the successful bidder or purchaser *at upset sale....*" (emphasis added). Specifically, Wiles asserts that it was the Tax Claim Bureau's policy to close its office on the date of the upset sale and only accept payment of back taxes prior to the date of the upset sale. This Court will not address this argument because Wiles failed to establish that he was prejudiced:

Q: What time did this sale actually occur? I will rephrase that. What time did the 2007 upset tax sale begin?
A: Let me check.
Mr. Blaine A. Black, attorney for Tax Claim Bureau: I am going to make an objection as to relevancy. I don't think Mr. [Lane] Turturice [Wiles' attorney] has pled any fact of putting the time of sale at issue here. *He*

Pleas of Washington County in the above-captioned matter is affirmed.

*has not pled that his client made some sort of a last minute, 11th hour attempt, to pay his taxes and was denied in which case this testimony might be relevant.* (emphasis added).
Mr. Turturice: *That's correct,* Your Honor.... (emphasis added).
....
Mr. Turturice: The law specifically states, and the real estate law specifically states the property owner has until the time of actual sale to pay their delinquent taxes.... *[T]he ... notice states that tax payments are only accepted up until 4:30 on the day before the sale.... So conceivably my client could have come in before Mr. Vanzin paid the sale price.* (emphasis added).
The Court: *Is there any evidence that he did that?* (emphasis added).
Mr. Turturice: *No, Your Honor....* (emphasis added).
H.T. at 16–18; R.R. at 16–18.