IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of the Report and Return : 
of Christine L. Krzysiak, Director of : 
the Crawford County Tax Claim : No.  545 C.D. 2016
Bureau of the Public Sale of Lands : 
and Properties, Advertised to be held : Argued:  November 14, 2016
the 25th Day of September, 2015 : 
                                      : 
Appeal of:  Denis Bubna : 


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE MICHAEL H. WOJCIK, Judge
                    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY
JUDGE McCULLOUGH                                  FILED:  December 7, 2016


        Denis Bubna (Appellant) appeals from the March 8, 2016 order of the Crawford County Court of Common Pleas (trial court) denying his petition to set aside an upset tax sale.


## Facts and Procedural History

        Appellant was the owner of a parcel located in Greenwood Township containing 8.58 acres of land, a building, a trailer, and bearing tax map number 2704-041 (Parcel 41 or the property).  On September 25, 2015, Parcel 41 was sold at an upset tax sale for failure to pay real estate taxes and a decree nisi was entered on October 13, 2015, confirming the sale.  Appellant filed timely objections and exceptions to the sale, arguing that the Crawford County Tax Claim Bureau (Bureau)

failed to meet its burden of proving strict compliance with all statutory notice requirements because the posted notice was not reasonably secured and he did not have actual notice of the upset sale. A hearing on Appellant's petition to set aside the sale was conducted on February 26, 2016.

Gerald Atkinson (Atkinson), an employee of Palmetto Posting, which handles posting of tax sale notices for Crawford County, testified that he was posting tax sale notices in Crawford County on August 28, 2015, and explained that, on that date, he arrived at Parcel 41 and observed what he thought was an old elementary school. According to Atkinson, the grass at the property was not well maintained, the business appeared to be closed, and there was a wooden business sign located adjacent to a public road. He further explained that he believed the most conspicuous place to post the notice would be on the business sign because it would be observable to anybody coming onto the property, as well as from the road. (Reproduced Record (R.R.) at 23a-25a.)

Atkinson noted that, after he posted the notice on the property and photographed the same, he generated a field report. Atkinson explained that, to generate a field report, he takes an image of the property he is posting, performs a series of checklists, and sends the report to Palmetto Posting's system, where the property being posted is reviewed to certify that it is the correct property. He explained that, when generating a field report for Parcel 41, he placed the notice on the business sign, retreated twenty to thirty feet, and took an image that captured the front of the building in its entirety. Atkinson stated that the business sign faced the public road and would have been visible to anybody driving or walking by the property. He also stated that the paper he used to post the notice was "a carbon-type paper. That's – it's fairly thick. Probably four to five times thicker than your average

2

typing paper so-to-speak. But it's a carbon-type paper" and was "[v]ery much more durable than a regular piece of paper." (R.R. at 27a-28a.)

According to Atkinson, he uses a routine procedure when posting tax sale notices and explained that he: confirms the address is correct; identifies the property; determines whether personal service is required, i.e., whether the property is commercial or residential; ensures the notice is posted; takes a photograph of the notice and property; submits the field report to the system; and confirms the system received the same. Atkinson stated that he could not recall whether he used staples to secure the notice, but testified that he "used tape on the top and bottom and the type of tape I used is 3M, very adhesive, very sticky. . . . [I]t's good quality tape that we use." (R.R. at 29a.) He also stated that there were no unusual weather conditions on the date he posted the notice at Parcel 41, that this is the first time he has received a complaint regarding a posting not being secured since 2006, and that he performs over 3,000 postings per year. (R.R. at 28a-29a.)

James Lynn (Lynn) testified that he resides beside Parcel 41. He stated that he mows Appellant's yard approximately once a week during the summer months and can see Parcel 41 from his property. Lynn explained that the property was previously used as an elementary school and that he is familiar with the business sign located at the front of the parcel; the business sign is close to the road and the building is approximately one-hundred feet from the sign. He testified that he never saw anything posted on the business sign when he mowed Appellant's yard and that he would have informed Appellant if he had. Lynn further testified that he travels past the sign every Wednesday on his way to Conneaut Lake and never saw anything posted. According to Lynn, a lot of truck traffic traverses the road in front of Parcel 41. (R.R. at 34a-42a.)

3

Ryan Hays (Hays) testified that he lives beside Appellant, that he has known Appellant for approximately seven years, and confirmed that they are friends. Hays stated that he "keep[s] an eye" on Parcel 41 for Appellant because a few break-ins have occurred at the property. According to Hays, because the property used to be an elementary school, local kids still use the property for various activities. Hays testified that he can observe the business sign from his living room, that he never observed anything affixed to the same, and that he would have advised Appellant if he had. Hays also said that Appellant asked him to inquire with other people in the area whether they had observed anything posted on the business sign and stated that no one had seen anything posted on the same. (R.R. at 43a-47a.)

Renee Manipole (Manipole) testified that she works as an administrative assistant at D & B Custom Wiring approximately three days per week, that Appellant is her boss, and that her employment would be in jeopardy if the upset sale is confirmed. She stated that her office is located in the building on Parcel 41, that another employee is located inside the building and shares an office with Appellant when he is in town, and that she usually picks up the mail from a mailbox across the street on her way into work in the morning or in the afternoon. Manipole explained that another individual, Sherry, is responsible for the business's taxes but is only present at the building approximately four times a year because she can work remotely. However, Manipole clarified that she is responsible for making a payment to the United States Treasury once a month and for making an online payment once a month as funds are available. Manipole noted that she places any items concerning taxes in a pile in her office for Sherry to pick up. (R.R. at 53a-59a, 70a.)

Manipole further testified that she made two payments to the Bureau in February 2015; one was a partial payment and the other was the remaining balance.

4

According to Manipole, Appellant received certified mail in May 2015 regarding taxes and, although she was not given actual permission, she signed Appellant's name, placed the items in Sherry's pile, and may have advised Sherry of the same. However, Manipole acknowledged that she did not tell Appellant what she had done because he was not around at that time. (R.R. at 60a-62a.)

Manipole confirmed that a theft occurred at the property in July 2015 where laptops, phone chargers, a candy dish, office supplies, and some food and soda were stolen. Manipole believed that the theft was committed by young kids because the business's expensive electrical equipment was not taken, although it was never proven, and stated that items in her office and bathroom had been disturbed, including the items she had set aside for Sherry. (R.R. at 62a-65a.)

Manipole testified that she never observed the notice while she was at the property. However, she explained that, after the upset sale occurred, she was asked to photograph the business sign and observed the notice on the ground partially covered in mulch with the tape still attached. According to Manipole, she picked up the notice and brought it to her office, where it remained until the day before she provided her testimony. (R.R. at 66a-70a.)

Appellant testified that he owns D & B Custom Wiring and purchased Parcel 41 from the school district in 2008. Appellant explained that he was not aware that he was so behind on the tax payments because it was his understanding that the payments made in February 2015 brought the property up-to-date except for one year; however, he acknowledged that the property had previously been scheduled to be sold at an upset sale in 2014 before he made arrangements to pay the outstanding taxes. He also stated that he did not see any of the mailings that came to the property, any of the notices published in the newspaper or legal journal, or the notice posted at

the property, and noted that he was able to pay the approximately $6,000.00 owed on the property at the time it was due because he had access to a cash line of credit in the amount of approximately $25,000.00. According to Appellant, it was not his practice for Manipole to execute his signature and, after he discovered that she did, he had a discussion with her and also advised the local post office administrator to leave him a card if he had any registered mail so he could retrieve the same. Appellant further testified that he learned Parcel 41 had been sold at the tax sale when one of the purchasers visited the property and advised him of the same. (R.R. at 71a-77a, 80a-85a.)

Appellant explained that the business sign has a width of three-and-one-half inches. Thus, according to Appellant, the notice expanded beyond the width of the sign itself. Appellant explained that the sign is in a location where it can be seen easily, but noted that it is close enough to the road that it could shake if vehicles drove past. (R.R. at 79a-80a.)

In addition to the proffered testimony, Atkinson's field report, the certified mail receipt, the posted notice, and the deed to Parcel 41 were entered into the record.

By order and memorandum opinion dated March 7, 2016, the trial court dismissed Appellant's petition to set aside the tax sale, reasoning that the Bureau met its burden of establishing, through competent evidence, compliance with the statutory notice requirements, citing this Court's decisions in *Wiles v. Washington County Tax Claim Bureau*, 972 A.2d 24 (Pa. Cmwlth. 2009), and *Hunter v. Washington County Tax Bureau*, 729 A.2d 142 (Pa. Cmwlth. 1999). According to the trial court, the notice was not unreasonably susceptible to being blown away or vulnerable to inclement weather because, although it extended approximately two inches past each

6

edge of the sign, it was affixed using "very adhesive" and "good quality" 3M tape. (Trial court op. at 4.) The trial court noted that the notice was discovered at the base of the sign with the tape still attached, "suggesting that it could have been pulled down by one of the 'kids' who . . . continue to use the grounds of the . . . property." *Id*. Regarding the testimony of Appellant's witnesses, the trial court stated that "[n]one of the witnesses was unbiased, and their failure to observe the [notice] sometime after it was posted does not establish that it had not been reasonably secured to the [sign]." (Trial court op. at 5.)

On appeal to this Court,[1] Appellant argues that the trial court erred because the Bureau failed to meets its burden of proving strict compliance with the statutory notice requirements governing posting of real property tax sale notices. More specifically, Appellant argues that the Bureau failed to meet its burden to establish that the notice was reasonably secured.

Conversely, the Bureau argues that the trial court's determination that the notice was reasonably secured was supported by the record and Appellant failed to produce any evidence indicating otherwise.

## Discussion

Generally, tax sales are presumed valid. *Miller v. Clinton County Tax Claim Bureau*, 909 A.2d 461, 463 n.1. (Pa. Cmwlth. 2006). Once properly challenged, the taxing authority bears the burden of proving strict compliance with

---

[1] "This Court's review in judicial tax sale cases is limited to considering whether the trial court abused its discretion, rendered a decision lacking in supporting evidence, or clearly erred as a matter of law." *Manufacturers and Traders Trust Company v. Luzerne County Tax Claim Bureau*, 56 A.3d 36, 38 n.8 (Pa. Cmwlth. 2012).

7

the notice provisions of the Real Estate Tax Sale Law (Law).[2] *Id.* "Notice provisions are to be strictly construed and strict compliance with such provisions is necessary to guard against deprivation of property without due process . . . ." *Hunter*, 729 A.2d at 143. Once the taxing authority provides competent evidence that the property was properly posted, the owner must produce contrary evidence. *See Barylak v. Montgomery County Tax Claim Bureau*, 74 A.3d 414, 417 (Pa. Cmwlth. 2013). "Questions of credibility, conflicts in the evidence and the weight to assign evidence are matters for the trier of fact to resolve and will not be disturbed on appeal." *Consolidated Return by McKean County Tax Claim Bureau of 9/12/2000 ex rel. Howard*, 820 A.2d 900, 903 (Pa. Cmwlth. 2003).

The Law requires that notice be provided by publication, mail, and posting. Section 602 of the Law, 72 P.S. §5860.602. "The Law does not prescribe a particular method of posting; however, the method chosen must be reasonable and likely to inform the taxpayer of an intended real property sale." *McKean*, 820 A.2d at 901. "[T]his Court has taken a practical and commonsense approach to determine whether a posting was reasonable. Each case depends on the nature and location of the property and, of course, the placement of the [n]otice." *Wiles*, 972 A.2d at 28. Our case law has explained that a posting is reasonable if it is "conspicuous to the owner and public and securely attached." *Id.*

Appellant essentially argues that the posted notice was not securely attached because it is not clear that the tape used to post the notice was designed for adhesion to a wood surface and it was affixed in such a way that the posting would be vulnerable to weather conditions, specifically alleging that:

---

[2] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§5860.101–5860.803.

8

The posting was not under cover. It was accessible to the elements. The posting was completed with two pieces of tape. There was no evidence that the tape is designed for adhesion to wood in the outdoors. No staples were used. The surface area underneath the notice was significantly smaller than the notice. Thereby permitting wind to buffet against the back of the notice.

(Appellant's brief at 6.)

Additionally, Appellant avers that the trial court's reliance on *Wiles* was misplaced and that case is distinguishable from the present matter because the poster in *Wiles* secured the notice using a separate anchor and staples, which were not used here.

In *Wiles*, the appellant challenged the propriety of a tax sale, alleging, *inter alia*, that the property was not properly posted because the posting consisted of one half of an '8.5 x 11' piece of paper attached to a 2 inch wide piece of wood lath with two staples." 972 A.2d at 28. On appeal to this Court, we stated that "this Court has taken a practical and commonsense approach to determine whether a posting was reasonable. Each case depends on the nature and location of the property and, of course, the placement of the Notice." *Id.* Upon review of the record, we affirmed the trial court and reasoned that the notice was conspicuous and reasonable because the evidence established, *inter alia*, that the posting was stapled twice, at the top and at the bottom, to a stick and hammered securely into the ground on the property.

In the only substantive discussion of *Wiles* in its decision, the trial court stated that "[t]he notice was not rendered unreasonably susceptible to being blown away, or vulnerable to inclement weather, because it extended about two inches past each edge of the [business sign]. *See Wiles*, 972 A.2d at 28 (attaching notice to "2 inch wide piece of wood lath with two staples" was sufficient)[.]" (Trial court's op. at 4.) Contrary to Appellant's suggestion, the trial court did not cite *Wiles* for the

9

proposition that the instant posting was securely attached; rather, the trial court cited *Wiles* for the proposition that a posted notice that extends beyond the edges of the surface does not render the posting *per se* insufficient. In that regard, we discern no error with the trial court's characterization of *Wiles*.[3] Moreover, it is clear to this Court that *Wiles*'s holding was fact dependent and, because *Wiles* did not establish any particular standards regarding the specific manner of secure attachment of notice, we disagree with Appellant's averment that the lack of a separate anchor and staples renders the present posting insecure.

Appellant also alleges that the trial court's reliance on *Hunter* was erroneous and the case is distinguishable because, there, the poster used a tack and pins and wrapped masking tape around the notice to secure the same, which did not occur here.

In *Hunter*, the appellant challenged the propriety of a tax sale, arguing, *inter alia*, that the "five by seven sheets of paper utilized to post the property were not . . . designed to remain conspicuous" because the posting materials were not weatherproof and the poster acknowledged that it was raining when posting occurred.

---

[3] Moreover, although not binding authority, we find this Court's decision in *In re Huss* (Pa. Cmwlth. No. 2417 C.D. 2008, filed January 5, 2010), instructive as it relates to *Wiles*. Specifically, in *Huss*, we stated that:

> Huss mischaracterizes our holding in *Wiles*, which does not establish any particular standards regarding the specific manner of secure attachment of a notice upon a subject property. The entirety of our address of that issue reveals that this Court placed no specific emphasis on the manner of posting attachment, and set no particular standard for the secure attachment of notice. Rather, *Wiles* stands for the general proposition that common sense, and the individual facts of each case, dictate the reasonableness of the notice at issue.

Slip op. at 4.

729 A.2d at 144. However, we rejected that argument and determined that the posting was reasonably secured, reasoning that the Law does not require that the notices be made of any particular material, including weatherproof material, and noting that the record contained no evidence indicating that the notice did not remain intact and legible.

In its opinion, the trial court's exclusive discussion of *Hunter* was a string citation and parenthetical stating that "weatherproof materials are not required." (Trial court op. at 4.) Contrary to Appellant's contention, the trial court's characterization of *Hunter* was accurate and we discern no error in its reliance on the same.

Appellant argues that this Court's decision in *McKean* should govern the present controversy because it illustrates how, as in the instant case, the taxing authority failed to meet its burden to establish strict compliance with the Law's statutory notice provisions.

In *McKean*, the property owner filed exceptions to an upset tax sale, asserting that notice thereof was not properly posted. The poster testified that he used masking tape to secure the notice, but acknowledged that he had no specific recollection of how the notice was attached. The trial court was not satisfied with the poster's testimony regarding the manner of posting and, based upon its credibility determinations and weighing of the evidence, concluded that the taxing authority failed to meet its burden and establish that the notice had been reasonably secured. Importantly, the trial court stated that:

> The issue is whether or not the notice was "reasonably secured" to the telephone pole. Nannen testified that he attached it with "ordinary masking tape." He had no recollection of how he attached it. Consequently we have no way of concluding whether or not it was "reasonably

11

secured." There is no testimony, for example, whether he secured the notice by winding the tape around the pole, or whether he only taped the corners of the notice to the pole, or only the top and bottom of the notice. Obviously, how it was affixed to the pole determines whether it was reasonably secured. If we do not [sic] how it was taped to the pole, we cannot conclude whether it was reasonably secured.

820 A.2d at 903. On appeal to this Court, we affirmed the trial court's decision because its determination that the taxing authority failed to meet its burden was "fully consonant with the evidence or, more properly, the lack thereof." *Id*.

As *McKean* instructs, the manner in which the notice was attached determines whether the notice was reasonably secured. However, unlike *McKean*, the record in the present matter contains evidence indicating how the notice was attached. More specifically, Atkinson testified that he "used tape on the top and bottom [of the notice] and the type of tape I used is 3M, very adhesive, very sticky. . . . [I]t's good quality tape that we use." (R.R. at 29a.) Unlike the procedural posture in *McKean*, here, the trial court concluded that the Bureau met its burden of proving compliance with the statutory notice provisions and, therefore, Appellant was required to produce contrary evidence. Appellant submitted witness testimony that the posted notice had not been observed on the property. However, the trial court reasoned that none of Appellant's witnesses were unbiased and "their failure to observe the [notice] sometime after it was posted does not establish that it had not been reasonably secured to the [sign]," Trial court's op. at 5, concluding that Appellant failed to sufficiently counter the Bureau's evidence that the notice had been reasonably secured. As this Court has stated, "[q]uestions of credibility, conflicts in the evidence and the weight to assign evidence are matters for the trier of fact to resolve and will not be disturbed on appeal." *McKean*, 820 A.2d at 903.

12

Additionally, Appellant's argument that the Bureau was required to show certain conditions to establish that the posting was reasonably secured, such as stapling the notice, using tape that is adhesive to wood, or taping the notice "on each facing of the sign where there is more surface area," Appellant's brief at 11, has been previously rejected by this Court because the Law does not require these conditions. *See, e.g.*, *Hunter*, 729 A.2d at 144. Instead, the trial court is authorized to determine the weight to be assigned to evidence and, here, determined that the Bureau met its burden of proving strict compliance with the statutory notice requirements and Appellant's evidence was insufficient to counter the same. The trial court's decision that the Bureau met its burden and that Appellant failed to sufficiently counter the Bureau's evidence is fully consonant with the record. Therefore, because the trial court did not abuse its discretion, render a decision lacking supporting evidence, or clearly err as a matter of law, we are constrained to affirm the trial court's determination.

Accordingly, the trial court's order is affirmed.[4]

_____
PATRICIA A. McCULLOUGH, Judge

---

[4] Appellant makes statements in his appellate brief concerning whether he had actual notice of the sale. However, Appellant also states that "[t]his prong of the statute is not being challenged as the case of *In re Upset Tax Sale Held 11/10/97*, 784 A.2d 834 (Pa. Cmwlth. 2001), precludes a challenge." (Appellant's brief at 7.) Additionally, at oral argument, Appellant's counsel conceded that he is not challenging whether he had actual notice of the sale. Therefore, we need not consider this issue.

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of the Report and Return : 
of Christine L. Krzysiak, Director of :
the Crawford County Tax Claim : No. 545 C.D. 2016
Bureau of the Public Sale of Lands :
and Properties, Advertised to be held :
the 25th Day of September, 2015 :
:
Appeal of: Denis Bubna :

## ***ORDER***

AND NOW, this 7th day of December, 2016, the March 8, 2016 order of the Crawford County Court of Common Pleas is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge