In Re: Objections to Tax Claim : 
Bureau's Sale of Real Estate for : 
Unpaid Taxes Levied for the Year : 
2013 : 
 : 
Robert J. Shubeck : 
 : 
v. : 
 : 
Carbon County Tax Claim Bureau, : No. 1960 C.D. 2016
                Appellant : Submitted: June 2, 2017


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                      FILED: January 5, 2018


      The Carbon County Tax Claim Bureau (Bureau) appeals from the Carbon County Common Pleas Court's (trial court) May 31, 2016 order granting Robert J. Shubeck's (Shubeck) Amended Exceptions/Objections and invalidating the September 25, 2015 upset tax sale. The Bureau presents three issues for this Court's review: (1) whether the Bureau complied with the notice provisions of Section 602 of the Real Estate Tax Sale Law (RETSL);[1] (2) whether the Bureau was required to and/or did comply with Section 607.1 of the RETSL;[2] and, (3) whether Shubeck had actual notice of the upset tax sale. After review, we affirm.

      Shubeck owned a vacant lot located at 42 West Mill Street, Nesquehoning, Carbon County, Pennsylvania (Property). On April 1, 2014, the

---

[1] Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. § 5860.601.

[2] Added by Section 30 of the Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.607a.

Bureau sent Shubeck a Notice of Return and Claim for the Property's 2013 unpaid real estate taxes by certified mail, return receipt required. On June 3, 2015, the Bureau sent Shubeck notice of the Property's scheduled tax sale (Notice of Sale) by certified mail, restricted delivery, return receipt required. Both mailings were returned to the Bureau as unclaimed after the United States Postal Service attempted delivery. In addition to the certified mailings, the Bureau sent Shubeck two tax delinquency reminder letters by first-class mail, postage prepaid, on November 5, 2014 and February 2, 2015. Each of the letters informed Shubeck that the Property's 2013 taxes must be paid by June 30, 2015 to avoid an upset tax sale and advertisement costs, and also warned that if the taxes remained unpaid, the Property would be sold. Neither of the letters contained the tax sale date. On August 27, 2015, the Bureau sent Shubeck a third tax sale notice by first-class mail, postage prepaid. The August 27, 2015 notice informed Shubeck that the Property would be sold on September 25, 2015 unless the estimated upset price, $306.28, was paid before the sale date. This notice was not returned to the Bureau as undeliverable. The Property was sold on September 25, 2015.

All of the aforementioned mailed notices were addressed to Shubeck at 108 West Mill Street, Nesquehoning, Pennsylvania (108 West Mill Street). Shubeck denied receiving all but the February 2, 2015 letter. After receiving the February 2, 2015 letter, Shubeck spoke with a Bureau representative, explained his intention to make payment, and left his cell phone number in case the Bureau needed to contact him. Shubeck did not attempt to make the delinquent tax payment until October 2015, when he appeared at the Bureau's office and learned of the sale. Thereafter, Shubeck filed Objections with the trial court on October 23, 2015, and Amended Exceptions/Objections on November 9, 2015. The trial court held a hearing on February 29, 2016. On May 31, 2016, the trial court granted Shubeck's Amended

2

Exceptions/Objections and invalidated the Property's sale. The Bureau appealed to the Pennsylvania Superior Court, which transferred the appeal to this Court.[3]

> Initially,
>
> [i]t is well settled that the notice provisions of the [RETSL] are to be strictly construed and that strict compliance with the notice provisions is essential to prevent the deprivation of property without due process. The purpose of a tax sale is not to strip an owner of his property but rather to insure that the tax on the property is collected. At a minimum, **due process requires that if reasonably possible, a government must notify an owner before his property is sold at an upset tax sale**.

*Tax Sale of Real Prop. Situated in Jefferson Twp.,* 828 A.2d 475, 479 (Pa. Cmwlth. 2003) (citation omitted; emphasis added).

The Bureau first argues that it complied with the notice requirements of Section 602 of the RETSL which requires three forms of notice be provided before a delinquent taxpayer's real estate be sold for unpaid taxes: by publication, posting and certified mail.

> Section 602 of the RETSL provides, in pertinent part:
>
> (a) **At least thirty [] days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county**, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.
>
> . . . .
>
> (c) The description may be given intelligible abbreviations.

---

[3] "Our review in tax sale cases is limited to determining whether the trial court abused its discretion, erred as a matter of law, or rendered a decision not supported by substantial evidence." *In re Balaji Invs., LLC,* 148 A.3d 507, 509 n.2 (Pa. Cmwlth. 2016).

(d) Such published notice shall be addressed to the 'owners of properties described in this notice and to all persons having liens, judgments or municipal or other claims against such properties.'

(e) **In addition to such publications, similar notice of the sale shall also be given by the bureau as follows**:

(1) **At least thirty [] days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by** [**the RETSL**].

(2) **If return receipt is not received** from each owner pursuant to the provisions of clause (1), then, at least ten [] days before the date of the sale, **similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address** by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes.  It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

(3) **Each property scheduled for sale shall be posted at least ten [] days prior to the sale**.

(f) The published notice, the mail notice and the posted notice shall each state that the sale of any property may, at the option of the bureau, be stayed if the owner thereof or any lien creditor of the owner on or before the actual sale enters into an agreement with the bureau to pay the taxes in instal[l]ments, in the manner provided by [the RETSL].

72 P.S. § 5860.602 (emphasis added).

The Bureau's Director Renee Roberts (Roberts) testified at the hearing before the trial court that on April 1, 2014 (at least 30 days before any scheduled sale), the Bureau sent Shubeck a Notice of Return and Claim by certified mail to 108 West Mill Street advising that "the [] taxes were due and owing for . . . 2013 to the [Bureau]."  Reproduced Record (R.R.) at 23.  The Bureau mailed the Notice of

4

Return and Claim certified mail which was attempted three times and returned to the Bureau unclaimed on April 25, 2014. *See* R.R. at 23. Thereafter, the Bureau sent the June 3, 2015 Notice of Sale to Shubeck at 108 West Mill Street (at least 30 days before the upset sale) by certified mail, return receipt requested. *See* R.R. at 25; *see also* R.R. at 95-96. Although delivery of the Notice of Sale was attempted three times, it was returned to the Bureau unclaimed on July 1, 2015. On August 27, 2015 (at least 10 days before the sale), the Bureau sent notice by first class mail, certificate of mailing[4] to Shubeck at 108 West Mill Street which was not returned to the Bureau as undeliverable. *See* R.R. at 26. The Bureau published the notice of the sale in the *Times News and the Carbon County Law Journal* on August 14, 2015. *See* R.R. at 29-30.

Roberts related that in addition to the above-stated mailings and publications, Deputy Sheriff Michael Zavagansky (Zavagansky) posted notice of the public sale on a bush at the Property on July 17, 2015. *See* R.R. at 27-28. Zavagansky testified that the Property was covered in weeds and explained that he "put a slit in the middle of the paper, [took] a weed, slid[] it through and slid[] it down, and that's a legal posting." R.R. at 48. When Zavagansky was asked whether he knew "if it stayed there, blew away, [or] [anything] related to that[,]" he replied: "Once we post it we have no idea what happens to it after that." *Id.* Based upon the above-cited record evidence, the trial court concluded that the Bureau did not comply with the posting provisions of Section 602 of the RETSL.

> '[T]his Court has taken a practical and commonsense approach to determine whether a posting was reasonable. Each case depends on the nature and location of the property and, of course, the placement of the [n]otice.' *Wiles* [*v. Washington Cty. Tax Claim Bureau,*] 972 A.2d [24,] 28 [(Pa. Cmwlth. 2009)]. Our case law has explained

---

[4] A certificate of mailing provides evidence that mail has been presented to the United States Postal Service for mailing.

> that a posting is reasonable if it is 'conspicuous to the owner and public and securely attached.' *Id.*

*Matter of Krzysiak,* 151 A.3d 292, 297 (Pa. Cmwlth. 2016). Here, we cannot hold that a paper with a slit in it, pulled onto a weed is "securely attached." *Id.* Accordingly, we discern no error in the trial court's conclusion.

The Bureau next contends it was not required to comply with Section 607.1(a) of the RETSL, but that it nevertheless satisfied the notice provision. Section 607.1(a) of the RETSL states:

> **When any notification of a pending tax sale** or a tax sale subject to court confirmation is required to be mailed to any owner, . . . and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or **is not returned or acknowledged at all**, **then, before the tax sale can be conducted or confirmed, the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him**. **The bureau's efforts shall include, but not necessarily be restricted to, a search of** current telephone directories for the county and of the dockets and indices of the county tax assessment offices, **recorder of deeds office** and prothonotary's office, **as well as contacts made to any apparent** alternate address or **telephone number which may have been written on or in the file pertinent to such property**. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

72 P.S. § 5860.607a(a) (emphasis added). Because the two notices sent to Shubeck by certified mail were returned to the Bureau unclaimed, Section 607.1 of the RETSL was triggered. The Court must, therefore, determine whether the Bureau met the additional notification requirements set forth in Section 607.1 of the RETSL.

6

With respect to the Bureau's additional efforts to locate Shubeck, Roberts testified:

> Q. [Bureau's Counsel] All right. Now, after that certified mail notice was returned as unclaimed, did the [B]ureau make additional efforts to determine [] Shubeck's current address for notification purposes?
>
> A. [Roberts] Yes, we did.
>
> Q. Okay. And what was done?
>
> A. We checked -- we reviewed the tax assessment records, the property records, and as well as their occupational taxes to see if anything has a different address which we did not find. We found everything was the same. We also contacted the tax collector, and the tax collector again said -- agreed that that was the same address. Then we also looked through the telephone directory, the Carbon County one and then also a local one, and that showed the same address.
>
> And we do go back through our file once again to see if we missed an address, and that showed the same address. We have computer notes. We check that as well, and then we also check the Prothonotary's office which all reflected the same address.

R.R. at 25-26; *see also* R.R. at 96 (Additional Notification Efforts Checklist).

Importantly, Roberts did not declare that there was a search of the recorder of deeds records. Although the Bureau's Additional Notification Efforts checklist contains a notation at the bottom: "**REC. OF DEEDS:** researched on a monthly basis[,]" R.R. at 96, there is no indication when or if it was actually completed. All of the other listed notification efforts have dates and initials next to them to confirm when and by whom they took place, however, this notation had neither. Further, Shubeck testified that he called the Bureau and requested that he be contacted by his cell phone if anything further occurs with his Property because that

is the best way to contact him, yet he was never contacted.[5] *See* R.R. at 57. Because there is no record evidence that a search "of the dockets and indices of the . . . recorder of deeds office" was completed, and there was no contact[] made to any apparent alternate . . . telephone number which may have been written on or in the file pertinent to such property[,]" we hold that the Bureau did not comply with the notice provisions of Section 607.1(a) of the RETSL.[6]

Lastly, the Bureau asserts that because Shubeck had actual prior notice of the tax sale, strict compliance with the RETSL notice provisions is waived. We disagree.

We recognize that "[t]his Court has waived compliance with the strict statutory notice requirements of Section 602(e) where the record owner has **actual notice of the tax sale** in certain circumstances."[7] *In Re Tax Sale of 2003 Upset,* 860 A.3d 1184, 1190 (Pa. Cmwlth. 2004) (emphasis added). However,

> [i]n *Jones* [*v. Flowers,* 547 U.S. 220 (2006)]*,* the United States Supreme Court reiterated its rejection that notice of tax delinquency satisfied the notice requirements for the *actual sale* of property:
>
> > [T]he common knowledge that property may become subject to government taking when taxes are not paid does not excuse the government from complying with its constitutional obligation of notice before taking private property. We have previously stated the opposite: **An interested party's knowledge of**

---

[5] Although Roberts maintained that there was no notation of this message in Shubeck's file, the trial court found Shubeck credible. *See* R.R. at 118. As the trier of fact, it is within the trial court's province to make all credibility determinations. *Parkview Court Assocs. v. Del. Cty. Bd. of Assessment Appeals,* 959 A.2d 515 (Pa. Cmwlth. 2008). This Court is prohibited from making contrary determinations to reach an opposite result. *Id.*

[6] This holding is limited to the circumstances herein, where the trial court expressly found Shubeck's testimony that the Bureau was advised to contact him by cell phone credible.

[7] "Actual notice to a record owner will not always cure a defect in the posting because . . . the purpose of the posting is to alert not just the record owner but the public at large." *In Re Tax Sale of 2003 Upset,* 860 A.3d 1184, 1190 (Pa. Cmwlth. 2004).

8

> **delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending.**

[*Id.* at 232-233] (quotations omitted) (emphasis added).

*Fernandez v. Tax Claim Bureau of Northampton Cty.,* 925 A.2d 207, 215 n.19 (Pa. Cmwlth. 2007). Here, although Shubeck admitted to receiving the tax delinquency notice, there is no record evidence that Shubeck received actual notice of the date and time of the tax sale. Accordingly, the Bureau's strict compliance with the RETSL notice provisions was not waived.

For all of the above reasons, we affirm the trial court's order.

_____
ANNE E. COVEY, Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: Objections to Tax Claim Bureau is Sale of Real Estate for Unpaid Taxes Levied for the Year 2013 | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Robert J. Shubeck | : | |
| | : | |
| v. | : | |
| | : | |
| Carbon County Tax Claim Bureau, Appellant | : | No. 1960 C.D. 2016 |
| | : | |

## O R D E R

AND NOW, this 5th day of January, 2018, the Carbon County Common Pleas Court's May 31, 2016 order is affirmed.

_____
ANNE E. COVEY, Judge